HORACE MANN INSURANCE
COMPANY, Plaintiff–
Appellant,

v.

Robert PETERS; and Jane Doe, a minor
By and Through her next friends and
parents Ann Doe and Sam Doe, Defen-
dants–Appellees.

No. 95CA0344.

Colorado Court of Appeals,
Div. II.

May 15, 1997.

Rehearing Denied June 26, 1997.

Certiorari Granted Dec. 22, 1997.

Deisch and Marion, P.C., Michael B. Marion, Gregory K. Falls, Denver, for Plaintiff–Appellant.

Oliphant, Hammond & O'Hara, Kristopher L. Hammond, Steamboat Springs; William C. Hibbard, P.C., William C. Hibbard, Steamboat Springs, for Defendants–Appellees.

Opinion by Judge CRISWELL.

In this declaratory judgment action, plaintiff, Horace Mann Insurance Company, appeals from an order of the trial court denying its motion for summary judgment, declaring that it was obliged to defend defendant Robert Peters in certain federal court litigation commenced against Peters by the other defendant, Jane Doe, through her parents Ann and Sam Doe, and awarding costs and attorney fees to defendant Peters. We reverse.

With respect to the issues addressed by the trial court and now presented to us, there are no disputed issues of material fact. The undisputed facts show the following:

At all relevant times, defendant Peters was a third-grade teacher in Moffat County School District RE–1. Because of certain alleged acts by Peters involving Jane Doe, one

of his students and the daughter of Ann and Sam Doe, he was charged with, and ultimately pleaded guilty to, engaging in unlawful sexual contact with her while he was in a position of trust with respect to her.

Thereafter, the Does instituted suit in the local federal district court against Peters, the school district, two of Peters' supervisors, and the district's superintendent. Jurisdiction of the federal court was premised on several federal statutes, including the one that grants that court jurisdiction over civil rights claims.

Does' federal court complaint was divided into two major parts—first were "General Allegations," consisting of some 22 separately pleaded paragraphs, which summarized the factual bases relied upon; these allegations were followed by some 14 claims for relief, not all of which were directed against Peters. However, none of the allegations under any of the relevant claims for relief relied upon facts not summarized in the complaint's General Allegations. The latter allegations, rather, set forth alternate (or perhaps duplicative) legal theories of recovery, based upon the common core of historical facts described in the General Allegations.

Initially, the Does alleged that their claims arose "from a series of sexual assaults and battery (sic)" perpetrated by Peters upon Jane Doe. More specifically, they asserted that, in the 1989–1990 school year, Peters engaged in repeated sexual assaults while Jane Doe was a student in his class. They also alleged that, prior to the time of these assaults, complaints by other girl students against Peters, asserting improper sexual touching by him, had been received by Peters' supervisors, but because of the school district's policy of "reckless indifference" to such complaints, nothing had been done. Finally, it was asserted that Peters' assaults upon Jane Doe and the other defendants' failure to protect her and other girl students from him constituted a violation of Jane Doe's constitutional rights "to be free from sexual abuse by school staff members including Peters," as well as violations of several federal statutes that were specifically described.

Based upon the foregoing factual allegations, the Does then asserted claims against Peters, based upon the common law torts of assault, battery, negligent infliction of emotional distress, negligence, negligent violation of a fiduciary duty, and outrageous conduct. In addition, it was asserted that Peters' acts constituted a violation of Jane Doe's right to due process of law, under both the federal and state constitutions, a deprivation of her civil rights under 42 U.S.C. § 1983 (1994), and sexual discrimination under federal enactments. The Does sought compensatory, consequential, and punitive damages, as well as costs and attorney fees.

During the period referred to in the federal court complaint, there existed a contract of liability insurance that had been negotiated between Horace Mann and the National Education Association for the benefit of the association's members, including members of the Colorado Education Association. Peters was a member of the latter organization.

The relevant terms of this contract provided as follows:

Under Part III A, referred to as "Educators Liability" coverage, Horace Mann agreed "to pay all damages which [the member] shall become legally obligated to pay as a result of any claim: which comes from an occurrence in the course of [the member's] educational employment activities and which is caused by [the member's] acts or omissions...." The term "occurrence" was defined as "an event which results in damages to someone other than" a member covered by the contract. In addition, Horace Mann agreed to defend against any such claim and to pay all costs and expenses incurred in such defense.

The limits of this coverage were "$1,000,000 per member per occurrence (other than civil rights issues)" and "$250,000 per occurrence (civil rights issues)." In addition, while the amounts paid by Horace Mann in defense costs and expenses were generally to be in addition to these limits, the contract provided that the amount paid as attorney fees and costs in defending against a claim based upon "an alleged violation of any civil rights guaranteed by the Constitution or Civil Rights Statutes of the United States" were

to be included within the limits of coverage for such a claim.

Another coverage, Part III B, provided for reimbursement to the member for attorney fees and costs incurred in defending against any criminal charge arising out of the course and scope of employment, if the member were exonerated. If the charge resulted from the member's use of corporal punishment, however, such reimbursement was to be made, irrespective of the result of the proceedings. Likewise, under Part III C, Horace Mann agreed to pay any premium for a bail bond in connection with such proceedings, up to a limit of $1,000.

This contract contained a number of exclusions, some of which were exclusions from all coverages under the contract, and some of which related only to specific coverages. The three limiting conditions relevant to the issues presented here provided as follows:

> Part III (A) of this contract does not apply to any civil suit arising out of an act, *other than corporal punishment*, which has been held by a court to establish a crime.
>
> [the criminal act exclusion]
>
> . . . .
>
> Part III (A) of this contract does not apply to occurrences involving damages which are the intended consequences of action taken by or at [the member's] direction, *unless the action involves corporal punishment*. [the intentional act exclusion]
>
> . . . .
>
> Part III(A) does not apply to punitive damages in excess of $5,000. [the punitive damages limitation] (emphasis supplied)

The contract of insurance defined "corporal punishment" as "the infliction by an insured of physical pain upon a student as a disciplinary measure for actual or alleged misbehavior."

Subject to a reservation of rights, Horace Mann provided a defense to Peters in the federal court litigation. However, it also commenced this declaratory judgment action, seeking a determination that, under the terms of its contract, it had no duty either to defend Peters or to indemnify him with respect to any amounts for which he might become liable under any judgment or settlement agreement.

Thereafter, Horace Mann, relying upon the foregoing facts, sought summary judgment on all issues. Peters resisted this motion, but he did not file any motion seeking summary judgment on his own behalf.

The trial court denied Horace Mann's motion. It also specifically held that "Horace Mann has a duty to defend Peters in the Doe suit." In addition, relying upon *Allstate Insurance Co. v. Robins*, 42 Colo.App. 539, 597 P.2d 1052 (1979), the court also entered judgment for Peters for some $6,600, representing the costs and attorney fees expended or incurred by him in the defense of this action.

## I.

■ On its face, Horace Mann's appeal here purports to be from the trial court's denial of its motion for summary judgment. However, such an order is not appealable. *Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244 (Colo.1996).

■ Horace Mann argues, nevertheless, that the court's order contained an affirmative declaration that it owed a duty to defend Peters and that such declaration was the judicial equivalent of entering a summary judgment in Peters' favor. It further contends that the court erred in making such declaration because Peters had filed no motion requesting summary judgment.

If Horace Mann is correct in this latter assertion, its appeal must be dismissed, because, if the trial court had no authority to enter this order, there would exist no order from which any appeal could be taken. We disagree, however, that the court lacked authority to enter such an order.

As noted, while Peters filed a written response resisting Horace Mann's summary judgment motion, he filed no countermotion. At the foot of his response to Horace Mann's motion, however, he requested that the court declare that "Horace Mann [owes] a duty to defend him." Horace Mann raised no objection to this request, and in denying its mo-

tion, the court affirmatively decreed that such a duty existed. And, its later actions in awarding Peters his costs and attorney fees confirmed that the court treated this ruling as a final disposition of this issue.

Under these circumstances, we agree with Horace Mann that the trial court's ruling, which contained a final resolution of the claim asserted by it, was the equivalent of the grant of summary judgment to Peters. We disagree that such a procedure was improper.

Under the federal rules, the decisions are nearly uniform that, upon a motion filed for summary judgment by one party, a court may enter judgment for the non-moving party, provided proper notice is given to the moving party so as to allow that party to submit any additional evidence upon the underlying issues. *See Mullen v. St. Paul Fire & Marine Insurance Co.*, 972 F.2d 446 (1st Cir.1992) (non-moving party filed nothing in opposition to moving party's motion and supporting documents); *McCarty v. United States*, 929 F.2d 1085 (5th Cir.1991). *See generally* 6 *Moore's Federal Practice* § 56.12 at 56–161, et seq. (2d ed.1996).

In *Moore v. Georgeson*, 679 P.2d 1099 (Colo.App.1983), this rule was adopted as a part of Colorado's procedural law. *See also Field v. Sisters of Mercy*, 126 Colo. 1, 245 P.2d 1167 (1952) (approving grant of summary judgment at pre-trial conference without motion from either party).

*Morlan v. Durland Trust Co.*, 127 Colo. 5, 252 P.2d 98 (1952) does not dictate a contrary conclusion. There, both parties filed cross-motions for summary judgment, and as a result, the trial court concluded that it was bound to accept the parties' seeming agreement that there was no genuine dispute with respect to any material fact. Relying upon prior federal cases construing the federal rules, our supreme court held that the mere fact that both parties assert that there is no genuine issue of any material fact does not necessarily make it so. Indeed, as the court noted, a party may be willing to accept, for purposes of its motion and under its legal theory, factual allegations of the other party, but it may not be willing to admit those allegations for other purposes. That, however-

er, is not the circumstance portrayed by this record.

■ Under *Hecla Mining Co. v. New Hampshire Insurance Co.*, 811 P.2d 1083 (Colo.1991), an insurance carrier's duty to defend under a liability insurance policy issued by it is to be determined by comparing the allegations of the court complaint with the provisions of that policy. If those allegations potentially or arguably come within the policy's coverage, or if there is some doubt whether a covered theory of liability has been stated, the insurer must accept the defense. *City of Englewood v. Commercial Union Assurance Cos.*, 940 P.2d 948 (Colo. App.1996).

The issue presented to the trial court here, then, was the proper interpretation of the insuring agreement. And, while the parties disagreed with respect to that legal issue, there was no dispute as to the authenticity of the documents to be considered upon the question. Neither is there an assertion that there was any additional relevant information required to be considered.

Under these circumstances, the procedure used by the court in entering summary judgment for defendants was not improper.

## II.

■ We also reject Peters' assertion that the issues presented here are moot because the underlying litigation has been settled.

In *Hecla Mining Co. v. New Hampshire Insurance Co., supra*, the supreme court said that, if a liability insurer assumes the responsibility of defending an action under a reservation of rights and if it is later determined that it had no duty to do so, the insurer can seek reimbursement for its costs of defense from the insured. *See also Employers' Fire Insurance Co. v. Western Guaranty Fund Services*, 924 P.2d 1107 (Colo.App.1996).

Further, if a liability carrier is successful in proving that the risk is not covered by the policy, there exists no basis for the award of attorney fees to the insured. *Allstate Insurance Co. v. Orban*, 855 P.2d 9 (Colo.App. 1992).

Here, Horace Mann undertook the defense of the federal court suit while pursuing its declaratory judgment action. Hence, while settlement of the former action may mean that it will not need to continue its defense efforts in the federal court, the existence of defendant's contingent liability for the costs of defense of that action means that the issue of the existence of a duty to defend has not been rendered moot. *See Simon v. Shelter General Insurance Co.,* 842 P.2d 236 (Colo. 1992). Likewise, if Horace Mann prevails here, the award of attorney fees to Peters must be reversed.

### III.

■ As noted, the analytical framework within which an issue respecting a liability insurer's duty to defend its insured is to be considered was laid out in *Hecla Mining Co. v. New Hampshire Insurance Co., supra.* There, the supreme court recognized that an insurer's duty to indemnify its insured is much more limited than its duty to defend. Its duty to defend arises whenever a court complaint is filed which asserts a claim that arguably falls under the coverage of the policy. Policy exclusions will justify a refusal to defend only if "the insurer can establish that the allegations of the complaint are solely and entirely within the exclusions in the insurance policy." If the exclusions are subject to "other reasonable interpretations," which would not exclude the pleaded claim, a duty to defend arises although, ultimately, the facts produced in the trial of the underlying action may demonstrate that there is no coverage under the policy. *Hecla Mining Co. v. New Hampshire Insurance Co., supra,* 811 P.2d at 1090.

■ Further, if the underlying complaint asserts more than one claim, a duty to defend against all claims asserted arises if any one of them is arguably a risk covered by the pertinent policy. *Hecla Mining Co. v. New Hampshire Insurance Co., supra.*

Here, under the Educators Liability coverage of the contract, Horace Mann's liability extended to "all damages ... caused by [the member's] acts or omissions" that occur "in the course of [the member's] educational employment activities." Unlike some liability policies, this coverage is not limited to damages "not intended or expected" by the insured. *See Colard v. American Family Mutual Insurance Co.,* 709 P.2d 11 (Colo.App. 1985) (homeowner's liability policy defined "occurrence" as an "accident" resulting in injury or damage "neither expected or intended from the standpoint of the insured."). The language of the covering provision here extends to *all* acts or omissions of the member, whether negligent or intentional. Hence, tested only against the coverage provisions of part III A, and disregarding any question of public policy, the allegations of the Does' federal court complaint clearly fall within this coverage language.

■ The question presented, then, is whether either the intentional act exclusion or the criminal act exclusion so clearly excludes the type of damages alleged in the Does' federal court complaint that it may be said, as a matter of law, that Horace Mann had no duty to defend Peters in that litigation. We conclude that they do.

First, we reject the notion that, because the Does' complaint in the federal action contained conclusionary allegations of negligence, such allegations, without more, made it "arguable" that the exclusions did not apply.

Here, the factual statements of the Does' complaint specifically alleged that Peters had been guilty of a series of sexual assaults. Given these allegations, no claim for negligence can, as a matter of law, be asserted. *Nikolai v. Farmers Alliance Mutual Insurance Co.,* 830 P.2d 1070 (Colo.App.1991) (if complaint alleges a sexual assault, the law implies an intent to harm, even though a claim based on negligence is pleaded). *See Allstate Insurance Co. v. Troelstrup,* 789 P.2d 415 (Colo.1990) (an intent to harm must, as a matter of law, be inferred from a sexual assault).

Further, the language of the two pertinent exclusions is likewise clear on its face. Indeed, there is no claim that the terms of either are unclear or ambiguous.

Given the allegations of sexual assaults upon which each of the claims against Peters

was based and in light of Peters' criminal conviction, the "occurrence" out of which the Does' damages arose involved, as a matter of law, the "intended consequences" of Peters' acts, *Allstate Insurance Co. v. Troelstrup, supra,* and that suit arose out of acts that had been held to be crimes. Further, there is no suggestion, either in the federal court complaint or by the defendants here, that the sexual assaults perpetrated by Peters upon Jane Doe were some form of "corporal punishment."

Hence, both exclusions clearly apply to the claims asserted by the Does.

█ The defendants argue, however, and the trial court agreed, that, because the policy initially extends coverage to civil rights claims, which claims are generally based upon intentional acts, *see Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), to apply the intentional acts exclusion would be to nullify all of the contract's coverage for such claims. We disagree.

We note that this argument implicates only the intentional act exclusion of the contract; it is not directed to the criminal act exclusion. And, the latter provision would exclude the coverage here, even if the intentional act exclusion were held to be inapplicable. *See Swentkowski v. Dawson,* 881 P.2d 437 (Colo. App.1994).

█ Nevertheless, we recognize that, if an exclusion in a policy allows a liability insurer to receive a premium with no realistic chance of incurring any risk of liability, the exclusion will be held to violate public policy. However, courts should be cautious in applying this rule so as not to frustrate the purposes for the coverage. *O'Connor v. Proprietors Insurance Co.,* 696 P.2d 282 (Colo. 1985).

Moreover, the unambiguous terms of the intentional act exclusion here do not result in Horace Mann's exemption from liability for civil rights' claims. On the contrary, the contract, even in light of the intentional acts exclusion, provides important protection from such claims for the members of the group to which it applies.

As noted, this contract of insurance was negotiated for the benefit of teachers, and it generally provides coverage for civil rights claims. Moreover, while such coverage is generally not applicable if the claim arises from an intentional or a criminal act, there is an important exception to both those exclusions. If the teacher's act is designed to discipline a student, any claim for damages resulting from that act will be covered by the policy, even if that act is *both* intentional and criminal. In addition, in such a circumstance, Horace Mann is required to reimburse the teacher for costs incurred in the defense of any criminal charge that might result.

Further, in any civil litigation involving such a claim, an award of punitive damages may be entered against the teacher, and Horace Mann has agreed to pay such an award up to a maximum limit of $5,000.

A review of the provisions of this policy, then, makes it evident that the parties considered it to be important to protect a teacher against claims arising from disciplinary actions taken against students, whether those claims took the form of a common law tort claim or a civil rights claim. The contract provides coverage for such claims, and nothing in its terms excludes such coverage, albeit coverage for claims based upon other types of intentional or criminal acts is not provided.

Given the significance the parties placed upon such protection and recognizing that the contract does not relieve Horace Mann of the risk of liability for such claims, we cannot conclude that the intentional act exclusion here violates any public policy. *See O'Connor v. Proprietors Insurance Co., supra.* Hence, we conclude that the unambiguous terms of the two pertinent exclusions expressly negated any assertion that Horace Mann had any duty to defend Peters against the claims asserted against him in the federal court.

The judgment decreeing that Horace Mann had such a duty and awarding attorney fees to Peters is reversed.

PLANK and KAPELKE, JJ., concur.