**FARMERS INSURANCE EXCHANGE, a reciprocal insurance exchange organized and existing pursuant to the laws of California, Plaintiff–Appellee,**

v.

**Jeffery ANDERSON, a Colorado individual, as natural maternal grandfather and co-conservator of Cole Naeve, a Colorado individual; Tamara Anderson, a Colorado individual, as natural aunt and co-conservator of Cole Naeve, a Colorado individual; and Brittah Klug, a Colorado individual, Defendants–Appellants.**

No. 09CA1860.

Colorado Court of Appeals, Div. II.

Oct. 28, 2010.

Levy, Morse & Wheeler, P.C., Stuart D. Morse, Brian J. Waters, Greenwood Village, Colorado, for Plaintiff–Appellee.

Terry Rodgers, Boulder, Colorado, for Defendants–Appellants Jeffery Anderson and Tamara Anderson.

Law Offices of David Calvert, David Calvert, Greenwood Village, Colorado, for Defendant–Appellant Brittah Klug.

Opinion by Judge CASEBOLT.

This is a declaratory judgment action concerning underinsured motorist (UIM) insurance coverage. It arises out of an auto-pedestrian accident in which Chris Naeve (Naeve), an employee of Statewide Traffic Control, Inc. (Statewide), was killed when he was struck by an underinsured vehicle while working on a state highway. Jeffrey Anderson, as natural maternal grandfather and co-conservator of Cole Naeve; Tamara Anderson, as natural aunt and co-conservator of Cole Naeve; and Brittah Klug, who are members of Naeve's surviving family (the Family), appeal the summary judgment in favor of Farmers Insurance Exchange (Farmers) determining that the Farmers policy issued to Statewide did not provide UIM coverage here. We affirm.

## I. Facts

The parties stipulated to the following pertinent facts in a joint motion, which was approved and adopted by the trial court.

Farmers issued a policy of commercial automobile insurance to Statewide, which is owned by Naeve's sister, with a policy period of September 15, 2005, through September 15, 2006. The policy covered five specified vehicles. On May 2, 2006, Statewide purchased an additional pickup truck (truck), but did not contact Farmers within thirty days of

its purchase to add the truck to its policy, as the policy required.

On July 8, 2006, Justine Cone (Cone), another Statewide employee, drove the truck with Naeve to a job site. Upon arriving, Cone parked the truck on the easternmost far right lanes of the roadway, with the front of the truck facing north, the direction of traffic travel, and inside a closed construction zone, which was marked by electronic signage and traffic barrels.

The closed construction zone had orange traffic barrels and cones placed at regular intervals in a line parallel to the truck's driver's side for at least 250 feet in front of the truck, and at least 25 to 30 feet behind the truck. Approximately 25 feet behind the truck, within the closed construction zone and behind the same orange traffic barrels and cones, was a large electronic sign with flashing lights and arrows directing traffic. The parked truck was not physically connected in any way to the large electronic sign, which was operating on its own battery power. The electronic sign was in place before the truck arrived on the day of the accident.

Cone shut off the truck's engine after parking. The truck was not obstructing the flow of traffic and was not being used as a barricade or traffic diversion device. Cone and Naeve physically exited the truck. Naeve walked away from the truck, northbound, within the closed construction zone, as did Cone.

As Naeve was standing in the closed construction zone approximately fifty feet ahead of the parked truck, another vehicle (tortfeasor's vehicle) that was headed northbound within a lane open to through traffic immediately adjacent to the closed construction zone physically drifted out of its lane, causing its passenger side to collide with the driver's side of the parked truck. The tortfeasor's vehicle then collided with Naeve, causing his death. The tortfeasor negligently caused the accident.

Following the accident, the Family pursued a claim against the tortfeasor and settled it for her liability policy limit of $100,000. Farmers then filed this declaratory judgment action asserting that its policy, which provided $1 million in UIM coverage, did not provide UIM coverage to Naeve under these circumstances. The parties eventually stipulated to the above facts and filed cross-motions for summary judgment.

The trial court granted summary judgment in favor of Farmers, concluding that Naeve was not insured under the policy because, even assuming he was occupying the truck at the time of the accident, the truck was not a "covered auto" under the insurance policy because Farmers had not been timely notified that Statewide had purchased the truck. In its order, the trial court noted that the truck was added by an amendment to Statewide's policy to take effect on July 24, 2006, sixteen days after the accident. The trial court did not address the Family's contention that public policy overrode the stated policy terms. This appeal ensued.

## II. Insurance Coverage

The Family asserts, for various reasons, that the court's conclusion denying coverage under the language of the policy is erroneous. We first examine the policy provisions and agree with the trial court that, under the policy's clear and unambiguous terms, the parked truck was not covered under the Farmers policy because it was not listed as a "covered auto" and was not timely added to the policy as an after-acquired auto. We further conclude that Naeve was not "occupying" or "using" an auto, nor was he an "insured" under the policy.

### A. Standard of Review

Under C.R.C.P. 56(a), a party seeking a declaratory judgment may move for summary judgment. Because the interpretation of an insurance contract is a question of law for the court, where neither party disputes the authenticity of the documents necessary to the court's determination or the facts underlying it, summary judgment may properly be entered in favor of the moving party. *Horace Mann Ins. Co. v. Peters,* 948 P.2d 80, 84 (Colo.App.1997). We review a grant of summary judgment de novo. *A.C. Excavating v. Yacht Club II Homeowners Ass'n,* 114 P.3d 862, 865 (Colo.2005).

## B. Applicable Law

As with any contract, we construe an insurance policy to give effect to the intent of the parties. *Compton v. State Farm Mut. Auto. Ins. Co.*, 870 P.2d 545, 547 (Colo.App. 1993). Whenever possible this intent should be ascertained from the plain language of the policy alone. *Id.*

## C. Insurance Policy Provisions

Here, the declarations section of the policy contains five "Items." Item One designates the named insured as Statewide Traffic Control, a corporation. Item Two, the Schedule of Coverage and Covered Autos, states, "This policy provides only those coverages where a charge is shown in the premium column," and "Each of these coverages will apply only to those 'autos' shown as 'covered autos.' Autos are shown as covered 'autos' for a particular coverage by the entry of one or more of the symbols from the COVERED AUTOS section." The policy declarations further provide that, for liability coverage, "covered autos" are those described in symbols 7 and 9, and for uninsured motorist (UM) coverage, "covered autos" are those described in symbol 7.

Item Three lists a "schedule of covered autos you own" and describes five vehicles. It then shows a premium charge for each of the five vehicles for both liability and UM coverage. None of the five listed vehicles is the truck involved in this case.

Item Five, described as a "Schedule for Nonownership Liability," describes the named insured's business as "Other than a Social Services Agency," provides a rating basis for "number of employees," and designates two unnamed employees, with a premium charge for the coverage. According to the definitions section of the policy, "nonownership liability" means that the policy provides coverage for vehicles owned by two employees of Statewide.

The policy contains a "Business Auto Coverage Form" (BACF). In section 1, it states, "Item Two of the Declarations show[s] the 'autos' that are covered 'autos' for each of your coverages. The following numerical symbols describe the 'autos' that may be covered 'autos.' The symbols entered next to the coverage on the Declarations designate the only 'autos' that are covered 'autos.' "

Under subsection A of the BACF, which is denominated "Description of Covered Auto Designation Symbols," symbol 7, which was entered on the declarations page for both liability and UM coverage, states that coverage exists for "specifically described 'autos' " and "only those autos described in item Three of the Declarations for which a premium or charge is shown." Symbol 9, which was entered on the declarations page only for liability coverage, states that coverage exists for "nonowned 'autos' only" and states:

> Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees[,]" partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

Subsection B of the BACF is captioned "Owned Autos You Acquire After the Policy Begins" and states:

1. If Symbols 1, 2, 3, 4, 5, or 6 are entered next to a coverage in Item Two of the Declarations, then you have coverage for the "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol 7 is entered next to a coverage in Item Two of the Declaration, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all your "autos" that you own for that coverage or it replaces an "auto" you previously owned that had coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

Section II of the BACF describes "Liability Coverage" and subsection A thereof states, "We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and

resulting from the ownership, maintenance or use of a covered 'auto.' "

Subsection 1 of the liability coverage describes "who is an insured" for liability purposes and states, "[T]he following are 'insureds': (a) You for any covered 'auto'; (b) anyone else while using with your permission a covered 'auto' you own, hire or borrow," with certain exceptions not relevant here.

An endorsement in the policy provides for "Colorado Uninsured Motorists Coverage–Bodily Injury" (UM form), and states that "for a covered 'auto' licensed . . . in Colorado, this endorsement modifies insurance provided under the . . . [BACF]." It then provides:

A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle". . . .

B. Who is an Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

a. The Named Insured and any "family members".

b. anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto."

2. A . . . corporation . . . then the following are "insureds":

a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto."

Subsection F of the UM form then defines the word "occupying" as meaning "in, upon, getting in, on, out or off," and other provisions make clear that a car that is underinsured is also covered by the UM form.

D. Analysis

■ As Farmers has argued and as the trial court concluded, these provisions are clear and unambiguous. For UIM purposes, the policy defines an insured to be "anyone 'occupying' a 'covered auto.' " Under the stipulated facts, Naeve was not occupying any kind of vehicle at the time of his death. In addition, UIM coverage requires occupancy of a "covered auto," and the truck was not a covered auto because it was not originally scheduled in the policy and because Statewide failed to notify Farmers within thirty days of its purchase.

Nevertheless, the Family proffers several arguments asserting that the policy language itself provides UIM coverage. We next turn to, and reject, those assertions.

1.

The Family asserts that *Hawkeye–Security Insurance Co. v. Lambrecht & Sons, Inc.,* 852 P.2d 1317 (Colo.App.1993) (*Lambrecht*), is precisely on point because it requires coverage under policy language and circumstances identical to the UIM coverage at issue here. We disagree.

In *Lambrecht,* the insurance carrier issued a policy for UM coverage to a closely held corporation. The sole shareholder of the corporation and his spouse were employed by the corporation. The spouse was injured when traveling in a car that was not owned by the corporation and asserted a claim under the UM coverage. The insurance company contended that the UM coverage only required it to pay damages resulting from bodily injury sustained by the corporation, because the corporation was the only named insured. Several provisions of the policy applicable to UM coverage, however, made "any family member" an additional insured for UM coverage and defined a "family member" to include "a person related to you by . . . marriage . . . who is a resident of your household." *Id.* at 1318.

Noting that, if read literally, the policy provisions would never afford UM coverage because only damages resulting from bodily injury to the corporation could be recovered and a corporation cannot have relatives, a division of this court held that such a reading would allow the insurance company to receive a premium without providing any cov-

erage whatsoever. The division interpreted the insuring language to provide coverage and concluded that the spouse must be considered to be a "family member" for purposes of the UM coverage.

The Family relies upon the division's statement in *Lambrecht* that "[t]here is no requirement that either the insured or any family member be driving one of the vehicles designated in the policy at the time of the injury in order to recover under this uninsured motorist coverage." *Id.* But here, the Farmers UIM coverage specifically requires just that—when a corporation is the named insured, it defines an insured to be anyone "occupying a covered 'auto.'"

The Family also relies upon the *Lambrecht* division's statement:

> Here, the corporation was a small, closely-held, family business enterprise. As noted, Lambrecht was the wife of the corporation's sole stockholder; she was herself an active officer of the corporation; and she was one of the designated drivers listed on the application that was made to plaintiff. It is apparent, therefore, that the purpose to be fulfilled by providing uninsured motorist coverage in this policy was to protect the family members who were engaged in the corporation's business. Given these circumstances, we hold that Lambrecht was a "family member" of the corporation and, as such, was entitled to the benefits of the uninsured motorist coverage provided in plaintiff's policy.

*Id.* at 1319.

■ The Family asserts that, here, Naeve was a "family member," because Statewide is owned by his sister, and he was working within the course and scope of his employment at the time of his death. We do not discern how coverage here flows from that premise.

As indicated in subsection B(1) of the UM form, being a "family member" is relevant to the definition of "insured" for UM purposes only if the designated named insured is an individual. But the designated named insured here is a corporation, and in that situation, the policy language describes an insured for UM purposes as "anyone occupying a covered auto." The policy does not mention "family members" when the named insured is a corporation.

Accordingly, *Lambrecht* does not require coverage here. *See General Ins. Co. v. Smith,* 874 P.2d 412 (Colo.App.1993) (holding that *Lambrecht* did not apply to a policy naming a corporation as a "named insured" where, even though a company could not suffer bodily injury itself, the policy provided UM/UIM coverage for "anyone else occupying a covered 'auto'"); *Rademacher v. Ins. Co. of N. Am.,* 330 N.W.2d 858, 861 (Minn. 1983) (rejecting contention that, because a corporation cannot sustain bodily injury, the uninsured motorist coverage provided by a policy issued to a corporation was a nullity); *Turner v. Mutual Service Cas. Ins. Co.,* 663 N.W.2d 36, 40 (Minn.Ct.App.2003) (definition of insured "you" as corporation did not render UM/UIM coverage meaningless because the definition includes anyone occupying a covered auto), *aff'd,* 675 N.W.2d 622 (Minn. 2004).

■ The Family nevertheless asserts that Naeve was one of Statewide's first employees, and the policy indicates, in Item Five, that there are two employees for whom a separate premium is paid. But Item Five provides coverage for "nonownership liability" which, according to the definitions section of the policy, provides liability coverage for vehicles owned by employees. It is undisputed here that Naeve was not using a vehicle that he owned. Hence, that provision is not applicable here.

### 2.

■ The Family next asserts that Naeve was a simple permissive user under the liability coverage section of "who is an insured," that is, "anyone while using with your permission a covered auto you own." We reject this argument for a number of reasons.

■ First, the Family seeks coverage only under the UIM form, not under the liability section of the policy. Liability coverage protects the permissive user of a vehicle from claims that he has negligently operated a vehicle resulting in damages to a third party, and that situation is not present here. *See*

*DeHerrera v. Sentry Insurance Co.,* 30 P.3d 167, 175 (Colo.2001) (if a motorist insures a vehicle for liability coverage, his policy affords protection to all members of the public injured by his negligent conduct arising out of the use of the motor vehicle).

Second, Naeve was not "using" a "covered auto."

Third, the nonownership liability section of the policy covers vehicles owned by an employee, and Naeve did not own the truck involved here.

Fourth, even if Naeve were a permissive user under the policy when he used any of Statewide's other scheduled vehicles, that does not, contrary to the Family's contention, place him within the class of insureds entitled to coverage as a permissive user as to the truck involved here. In describing who is an insured in the liability section, the policy states that an insured is "anyone ... while using with your permission a covered 'auto' you own." Again, the truck involved here was not a "covered auto."

This result is consistent with cases in other jurisdictions interpreting similar, if not identical, policy provisions. *See, e.g., Lee v. Great Divide Ins. Co.,* 342 Mont. 147, 151, 182 P.3d 41, 44 (2008) ("[T]he definition of 'you' throughout the policy is the named insured, the corporation.... The applicable policy provisions limit coverage to the corporation and to anyone else occupying a covered auto.... We have not expanded coverage to injured persons involved in the corporation who are not occupying vehicles covered under the policy at the time of the accident.").

### III. Public Policy Issues

The Family contends that Naeve was entitled to UIM coverage because public policy and the uninsured motorist statute, as interpreted and analyzed in several Colorado cases, so mandate. We disagree.

### A. Applicable Law

■ "An insurance policy is a contract between the insured and the insurer, and as such, it is to be interpreted according to settled principles of contract law." *State Farm Mut. Auto. Ins. Co. v. Kastner,* 77 P.3d 1256, 1259 (Colo.2003). However, even if there is no coverage under the plain language of the policy, we must also analyze the scope of the coverage provided in light of the uninsured motorist statute. *Farmers Ins. Exch. v. Chacon,* 939 P.2d 517, 520 (Colo. App.1997). Thus, even if a policy provision is unambiguous and negates coverage by its clear terms, it may nevertheless be rendered void and unenforceable if it violates public policy by attempting to dilute, condition, or limit coverage mandated by the uninsured motorist statute. *Id.*

Section 10–4–609(1), C.R.S.2010, the uninsured motorist statute, states in pertinent part:

> No automobile liability ... policy insuring against loss resulting from liability ... for bodily injury or death ... shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles....

The statute also provides that uninsured motorist coverage "shall include coverage for damage for bodily injury ... that an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle." § 10–4–609(4), C.R.S.2010.

### B. *Aetna v. McMichael*

The Family first focuses on *Aetna Casualty & Surety Co. v. McMichael,* 906 P.2d 92 (Colo.1995), and contends that it mandates coverage here.

*McMichael* is, in some respects, factually similar to this case. There, McMichael sought UIM coverage under his employer's policy for injuries he sustained when struck by an underinsured motorist while he was sawing concrete joints in a highway median in front of his employer's parked truck. As in this case, the policy there defined an "insured" for UIM purposes as "anyone ... occupying a covered 'auto' or a temporary substitute for a covered 'auto.'" The parties stipulated that McMichael was not "occupy-

ing a covered auto" at the time of the accident because he was some distance away from the vehicle when he was struck. Nevertheless, holding that the uninsured motorist statute "require[s] insurers to offer UM/UIM coverage to a class of individuals as broad as the class covered under the liability provisions of an automobile insurance policy," the court looked to the definition of "insured" under that section. of the policy. *Id.* at 94. It noted that the liability provision covered "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow," *id.* at 95, and concluded that McMichael was "using a covered vehicle" at the time of the accident because he was employing it as a barricade and warning device. *Id.* at 96. Accordingly, McMichael was entitled to coverage.

The Family asserts that in *McMichael,* as here, the insurance company argued that because the injured worker was "not a named insured under the policy, he could recover underinsured motorist benefits only if he was injured while 'occupying' an insured vehicle." *Id.* at 95. Therefore, the Family contends, the result in this case should follow that in *McMichael.* But there are several reasons that result does not follow.

First, the supreme court did not reject the argument. Instead, the court articulated the broad principle that UM coverage must be as extensive as liability coverage in terms of whom the policy insures and, when the court analyzed the *liability* coverage there, the court held that there was a "covered auto" involved in the case because that vehicle was listed under the liability portion of the policy. The court also held that McMichael was "using" that covered auto as a barricade, even if he was not "occupying" it. *See id.* at 98–99. In contrast, here, the truck was not a "covered vehicle" because Statewide had failed to inform Farmers of its purchase within thirty days, as the policy required.

Second, even though the UM coverage class here must be as extensive as the class of insureds covered under the liability provisions of the policy to comply with *McMichael,* Naeve nevertheless was not an insured. The liability insurance provisions here define "who is an insured" as "You for any covered

'auto,'" and "anyone else while using with your permission a covered auto you own." Because the truck was not a covered auto, Naeve was not covered for liability purposes when using this particular truck.

For similar reasons, we reject the Family's assertion that Naeve was "using" the truck here as a barricade. The stipulated facts contradict that assertion.

Contrary to the Family's further contention, Naeve's status as an employee of Statewide working within the course and scope of his employment at the time of his death does not dictate that he would be entitled to liability coverage. While Statewide might be responsible for his negligence under respondeat superior principles while he was driving the truck involved here, that does not mandate insurance coverage for such exposure.

### C. Statutory Liability Coverage Notwithstanding Policy Language

▮ The Family contends that Naeve was entitled by statute to liability coverage for the truck under the compulsory liability insurance provision set forth in section 10–4–619(1), C.R.S.2010, regardless of the policy language. Therefore, it asserts, under the rule of *McMichael,* he was entitled to UIM coverage. We disagree.

The Family relies upon *Pacheco v. Shelter Mutual Insurance Co.,* 583 F.3d 735, 739 (10th Cir.2009). There, a resident relative daughter who owned a car that was not insured under her parent's UIM coverage asserted that a provision in the parent's policy excluding coverage for relatives who owned a car not insured under the policy was void. Construing the law in effect during 2000, when the accident at issue had occurred, the court agreed. In doing so, it relied upon a provision of the Colorado Auto Accident Reparations Act (No–Fault Act), *see* ch. 94, sec. 1, § 13–25–3(7), 1973 Colo. Sess. Laws 335 (later codified at § 10–4–703(6); repealed effective July 1, 2003), that defined "insured" to include "relatives of the named insured who reside in the same household as the named insured." *Cf.* § 10–4–

601(5), C.R.S.2010 (same definition). The court stated:

> Because UM/UIM coverage must be offered to the class protected by statute for liability coverage, we can look to statutorily mandated liability coverage to determine the minimum level of UM/UIM coverage that an insurer must offer a policyholder. In other words, if [the daughter] is among the class entitled by statute to coverage under compulsory liability limits, she is also entitled to UM/UIM coverage.

*Id.* at 739. The court held that the policy's nonownership-of-a-vehicle condition conflicted with the No–Fault Act because it attempted to narrow statutorily mandated coverage that had to include resident relatives. *See also Jaimes v. State Farm Mut. Auto. Ins. Co.,* 53 P.3d 743 (Colo.App.2002) (holding similar owned but not insured exclusion void when dealing with resident relative).

From this case, the Family argues that "[e]very owner of a motor vehicle who operates the motor vehicle on the public highways of this state ... shall have in full force and effect a complying policy under the terms of this part 6 covering said motor vehicle." § 10–4–619(1). The Family asserts that, because Statewide was required to have the truck insured for liability under a complying policy, it follows that Naeve fell within the class of persons entitled to coverage by the compulsory liability statute. This begs the question because it assumes that a complying policy must cover Naeve for liability *under all circumstances.* We disagree with that assumption.

Section 10–4–620, C.R.S.2010, requires "legal liability coverage for bodily injury or death arising out of the use of the motor vehicle to a limit, exclusive of interest and costs, of twenty-five thousand dollars to any one person in any one accident." This provision does not specifically state who must be insured, in contrast to the provision of the No–Fault Act noted above, in effect until July 1, 2003, upon which the *Pacheco* court relied. But even if we were to infer from section 10–4–601(5) (the definition of "insured" that is applicable to part 6 of title 10), that a complying liability policy must extend

to cover "the named insured, relatives of the named insured who reside in the same household as the named insured, and any person using the described motor vehicle with the permission of the named insured," the policy here does so. The policy designates Statewide as the named insured. Because a corporation cannot have "resident relatives who reside in the same household," that part of the provision need not have any effect. *See Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 225–26, 797 N.E.2d 1256, 1266–67 (2003) (the provision in a policy describing insureds to include family members is simply inapposite when the policyholder is a corporation). And the policy covers anyone else while using a covered auto, which is sufficiently similar to any person "using the described motor vehicle." Indeed, read this way, section 10–4–601(5) specifically *allows* liability coverage to be predicated upon using a motor vehicle that is described in the policy.

Accordingly, *Pacheco* provides no basis for coverage here.

### D. *DeHerrera v. Sentry*

■ The Family next contends that UIM coverage should be afforded to Naeve under *DeHerrera v. Sentry Insurance Co.,* 30 P.3d at 175. Resolution of this contention requires extensive analysis of that case and some of its progeny.

In *DeHerrera,* the plaintiff, Elizabeth DeHerrera, was the named insured under an auto policy issued by Sentry. DeHerrera's son, who resided with her, was injured in an accident with a pickup truck while riding his off-road motorcycle. DeHerrera sought personal injury protection (PIP) benefits under the No–Fault Act from Sentry to cover medical, rehabilitation, and lost wage expenses, and she also sought UIM coverage from Sentry because the owner of the pickup possessed limited liability insurance. Sentry denied coverage, asserting that the policy excluded from coverage persons occupying a vehicle that is not a car.

Concerning the claim for UIM coverage, the court concluded that statutory provisions and public policy overrode the terms of the insurance policy. It held that the language

and purpose of the UM/UIM statute "require an insurer to provide UM/UIM benefits to a person insured under the policy when injured in an accident caused by an uninsured or underinsured motorist without regard to the vehicle occupied by the insured at the time of injury." *Id.* at 169. Accordingly, the court concluded that DeHerrera's son was covered for UIM even though he was not occupying an insured vehicle under the policy. In so deciding, the court stated in part:

> The UM/UIM statute contains no provisions excluding protection for an insured based on the kind of vehicle an insured occupies at the time of injury. Rather, it simply states that UM/UIM coverage, if not waived by the named insured, must protect "persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." § 10–4–609(1). This phrase, " 'persons insured thereunder' means that insurers must provide UM/UIM coverage for the protection of *persons* insured under the liability policy that the insurer is issuing." *Aetna Cas. & Surety Co.*, 906 P.2d at 97 (emphasis added). Thus, the statute provides coverage for *persons* ; it does not place geographical limits on coverage and does not purport to tie protection against uninsured motorists to occupancy in any kind of *vehicle.*
>
> . . . .
>
> . . . Thus, because UM/UIM insurance is designed to protect an innocent insured as if the person at fault had been insured for liability, then an injured insured is covered by UM/UIM insurance *"whenever* or *wherever* bodily injury is inflicted upon him by the negligence of an uninsured motorist." In other words, the injured insured would have received the benefits of the uninsured or underinsured tortfeasor's liability policy without regard to the injured insured's location at the time of the injury, had that uninsured or underinsured motorist been insured.
>
> . . . .
>
> . . . We hold that the language of the UM/UIM statute and the purpose of that statute require that UM/UIM insurance apply to an insured person when injured by a financially irresponsible motorist, irrespective of the vehicle the injured insured occupies at the time of the injury. *Id.* at 175–76 (additional citations omitted).

The question is therefore whether the policy language involved here is inconsistent with the requirements of *DeHerrera.* For several reasons, we conclude that it is not.

First, the UIM determination in *DeHerrera* was based on the conclusion that section 10–4–609 requires UM/UIM coverage, if not waived by the named insured, to protect "persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." § 10–4–609(1). As the supreme court noted, the phrase "persons insured thereunder" requires UM coverage for the same persons who are insured under the liability coverage of the policy.

Here, liability insurance is provided to the named insured, Statewide, which is a corporation. Under the section of the policy designating who is insured for liability purposes, the policy states that the following are insured: "(a) You for any covered 'auto'; (b) anyone else while using with your permission a covered 'auto' you own, hire or borrow." Accordingly, either the corporation using a "covered auto" or any person using a "covered auto" is insured under the liability coverage. The Family does not contend that this liability coverage is in any way defective, is contrary to any statute, or violates public policy.

The insurance policy designates the following as insured for UM/UIM purposes: "If the Named Insured is . . . a corporation . . . then anyone 'occupying' a covered auto" is an insured. Hence, any person occupying a "covered auto" is insured under the UIM coverage.

We perceive that the policy at issue complies with *DeHerrera* because it provides both liability insurance and UIM coverage to essentially the same class of persons. But even if the phrase "using a covered auto" in the liability coverage is broader than "occupying a covered auto," the result under *DeHerrera* would only be to require UM coverage to be as broad as the liability coverage

for anyone "using" a covered auto. In both circumstances, the requirement that an auto be "covered" remains valid, because it is the same for both types of coverage.

Second, *DeHerrera* started from the premise that the son was an insured under the liability portion of the policy because he was a resident relative of the named insured. *Id.* at 168–69. The court specifically noted, throughout the opinion, that UM coverage must be provided to persons *insured* under the policy. *See id.* at 173–76 ("an insurer must provide UM/UIM benefits when an *insured* person is 'legally entitled to recover damages from owners or operators of uninsured motor vehicles'"; "an *insured* is entitled to recover UM/UIM benefits when a person who is at fault in an accident does not have any liability insurance"; "[i]f an *insured's* damages exceed the limits of the tortfeasor's liability coverage, an injured *insured* may receive compensation from her own policy"; "UM/UIM coverage replaces the benefits an innocent injured *insured* would have recovered" (emphasis added)).

All the language in *DeHerrera* pronouncing what the UM/UIM statute and public policy require must be understood in that context. *DeHerrera* did not hold that an insurance policy providing coverage only to "persons occupying a covered vehicle" was void; it held that a person designated as an insured in the policy cannot be denied coverage because of the type of vehicle that he or she occupies at the time of injury.

Here, Naeve is not being denied coverage because of the type of vehicle he occupied or used; he is being denied coverage because he is not an insured. In our view, nothing in *DeHerrera* states that it is contrary to the UM statute or against public policy to define "who is an insured" in terms of vehicle occupancy when dealing with persons other than the individual named insured and his or her resident relatives. Indeed, the factual predicate in *DeHerrera* involved a resident relative, not, as here, some person other than the named insured or a resident relative.

The court's statement that "the UM/UIM statute requires that UM/UIM insurance apply to an insured person who purchases such coverage ... irrespective of the vehicle the injured insured occupies at the time of injury," *id.* at 176, is not to the contrary. One must be an *insured* for coverage to apply "irrespective of the vehicle."

The court's further statement that an "injured insured" must be provided UM/UIM coverage "whenever or wherever bodily injury is inflicted upon him by the negligence of an uninsured motorist," *id.* at 175, must also be understood in that same context. Named insureds (when they are individuals) and resident relatives are covered anywhere and in any vehicle for UM/UIM if the named insured has purchased the coverage. But UM/UIM coverage for anyone else not specifically described arises only when such persons are using or occupying a covered vehicle. Otherwise, insurance coverage purchased by one individual could conceivably cover a variety of unrelated persons under a variety of unanticipated circumstances without payment of a corresponding premium.

Our interpretation is supported, in part, by the current statutory definition of the term "insured" in section 10–4–601(5). As previously noted, "'Insured' means the named insured, relatives of the named insured who reside in the same household as the named insured, and any person using the described motor vehicle with the permission of the named insured." The third category of "insureds" is, by definition, vehicle dependent. If *DeHerrera* were read to prohibit the use of vehicle-based coverage for this third class of persons, that decision would conflict with the very terms of the statute.

Moreover, in the section of the *DeHerrera* opinion discussing PIP benefits available under the No–Fault Act, the court noted that the No–Fault Act required an insurance carrier to provide PIP benefits to "three classes of persons: (1) the named insured, (2) relatives of the named insured, and (3) 'any other person occupying a described motor vehicle with the consent of the insured.'" *Id.* at 171. Hence, the No–Fault Act itself allowed coverage for PIP benefits for the third class of persons to be predicated upon their "occupancy" of "a described motor vehicle." And the court noted that such mandatory PIP coverage "applies to specified statutory

classes of *persons* and not classes of *vehicles."* *Id.* at 172.

The court also stated the following with regard to its conclusion that PIP coverage was mandated for an individual insured regardless of the vehicle that the insured was occupying or operating:

> [W]e find further support for our holding in the language of the No Fault Act regarding the specified third class of persons to whom mandatory PIP coverage applies. This class requires PIP coverage for "any other person occupying the described motor vehicle . . . ." As to this third class of persons, the statutory requirement expressly excludes *persons not occupying an insured vehicle from PIP coverage.* Because the legislature failed to restrict, in a similar way, PIP coverage for relatives of named insureds based upon occupancy of an insured vehicle, we presume from the absence of this restriction that the legislature did not intend for it to apply.

*Id.* at 173 (citation omitted).

In essence, the General Assembly had specifically allowed the "third class" of persons to be excluded from PIP coverage unless they were occupying a described motor vehicle. It would be anomalous to interpret *DeHerrera* to hold that a very similar if not identical class of persons—those occupying or using a covered auto—is an impermissible restriction on UM coverage.

Our reading of *DeHerrera* is reinforced by the language the supreme court used there in its example concerning potential unjust results that might arise from its holding. The court stated:

> We note that the argument can be made that requiring UM/UIM insurance irrespective of the vehicle occupied by an insured at the time of injury may encourage unjust results in particular circumstances. For instance, a family owning more than one vehicle may purchase insurance for only one vehicle, under the rule of this case, and yet recover UM/UIM benefits when struck by an uninsured motorist while occupying any of its owned but uninsured vehicles.

*Id.* at 176.

It is telling that the court employed the example of a *family* (which includes only named insured individuals and resident relatives) purchasing insurance for just one vehicle. When UM/UIM insurance is purchased to cover individuals and families, a policyholder can indeed purchase UM/UIM coverage on only one vehicle, yet nevertheless get such coverage on all vehicles. *See Wagner v. Travelers Prop. & Cas. Co.,* 209 P.3d 1119, 1126 (Colo.App.2008). But such coverage is only available to named insureds and resident relatives. If individuals or families wish to have coverage for additional persons beyond themselves (for example, nonfamily passengers and nonresident relatives), they must still insure each vehicle for which they desire that coverage. *See Farmers Ins. Exchange v. Benzing,* 206 P.3d 812, 816 (Colo. 2009) ("*DeHerrera* . . . only require[s] that the insureds and their resident family members are covered on all vehicles after they purchase one policy with UM/UIM coverage. Purchasing UM/UIM coverage on additional vehicles extends UM/UIM protection to guests and nonresident relatives of the insured traveling in the added vehicles.").

Contrary to the Family's contention, *Jaimes v. State Farm Mutual,* 53 P.3d at 746–47, does not require a different result. There, a division of this court held that the "owned but not insured" (OBNI) exclusion contained in a policy was void. It concluded that UIM coverage was available to an individual who was married to the named insured under the State Farm policy, and who was driving a vehicle that he owned but that was not insured under the State Farm policy. The division stated:

> Section 10–4–609(1)(a) plainly states that UM/ UIM coverage is "for the *protection of persons* insured [under the policy] who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom" . . . . The operative event for coverage under the statute is an injury to an insured arising from an accident involv-

ing an at-fault, uninsured or underinsured motor vehicle. Under the statute, the status of the insured at the time of the accident, whether the occupant of the insured motor vehicle as operator or passenger, the occupant of a nonowned motor vehicle as operator or passenger, a pedestrian, or the operator of an owned but not insured vehicle, is not germane to the insurer's obligation to provide UM/UIM benefits. Therefore, in our view, the "owned but not insured" exclusion is void as against the public policy of Colorado.

*Id.*

We read *Jaimes* to be limited to the factual context present there; that is, when a resident relative of an individual named insured owns a car that is not insured under the named insured's policy and seeks UIM coverage, the OBNI exclusion is void. Moreover, the language and holding of *Jaimes* are consistent with our interpretation of *DeHerrera,* because the division noted that "an injury to an *insured*" is the operative event triggering UIM coverage. *Id.* (emphasis added).

Nor does *Wagner v. Travelers,* 209 P.3d at 1126, or *Briggs v. American National Property & Casualty Co.,* 209 P.3d 1181, 1183 (Colo.App.2009), dictate a different result here, as the Family asserts.

The issue in *Wagner* was whether the UM/UIM statute required the insurance company to advise Wagner, a policyholder, of the implications of either *DeHerrera* or *Jaimes,* that UM/UIM coverage insures and therefore follows the insured and not the vehicle; that the OBNI exclusion of a vehicle owned by a resident relative is void for UM/UIM purposes; and that insuring one of Wagner's vehicles provided him and his resident family members with UM/UIM coverage in any vehicle, so that he did not need to purchase UM/UIM coverage on each separate vehicle. In the course of concluding that there were issues of material fact whether the insurance company sold the UM/UIM coverage on a per-policy or per-household basis, the division made the following statement, upon which the Family relies:

> *DeHerrera* clearly shifted the coverage analysis from the vehicle insured to the

person insured; that is, the UM/UIM coverage follows the insured, not the vehicle. Therefore, insuring one vehicle with UM/UIM coverage includes, at a minimum, the named insured and residential family members injured in that and any other vehicle. Thus, carrying UM/UIM coverages on multiple vehicles may well be unnecessary in the multi-vehicle policy.

*Id.* at 1126.

This statement is entirely consistent with our interpretation of *DeHerrera.* The *Wagner* division specifically noted that insuring one vehicle provides UM/UIM coverage to "the named insured and residential family members" regardless of the vehicle they might be occupying or using at the time of an injury. *Wagner* did not deal with, and thus its holding does not apply to, persons other than the individual named insured and resident relatives. Indeed, *Wagner* recognized that the policy involved there provided UM/UIM coverage for two vehicles and that the policy insured

> two classes of insureds—Class one included the named insured and any other person related to the named insured by blood, marriage, or adoption, including a ward or foster child, who was a resident of the named insured's household, or temporarily living elsewhere; Class two included any other person occupying a covered vehicle with the consent of the named insured or a pedestrian if the accident involved the covered auto. If a customer purchased UM/UIM coverage on one vehicle, only Class one was insured. However, upon insuring the second vehicle both classes were insured.

*Id.* at 1122. Thus, the division recognized that under *DeHerrera,* a named insured and his or her resident relatives (described as Class one) would be covered for UM/UIM when involved in an accident with *any* vehicle, but that any other persons (described as Class two) would be covered only if they occupied a covered vehicle or were pedestrians who were injured in an accident involving a covered vehicle.

*Briggs* involved an issue similar to that addressed in *Wagner,* and concluded that

genuine issues of material fact precluded summary judgment on one issue. Importantly here, the division declined to follow *Wagner* to the extent that *Wagner* suggested that an OBNI exclusion is immaterial in the context of a multi-vehicle policy, and concluded that an insurer that includes an OBNI exclusion in its policies fails to satisfy its disclosure obligations under the UM/UIM statute. But like the *Wagner* division, the *Briggs* division specifically noted that an insured

> might purchase UM/UIM coverage on a single vehicle, which would nonetheless, by operation of law, provide UM/UIM coverage for Class One insureds in any vehicle, and Class Two insureds in that single vehicle only. *See DeHerrera v. Sentry Ins. Co.,* 30 P.3d 167 (Colo.2001); *Jaimes v. State Farm Mut. Auto. Ins. Co.,* 53 P.3d 743 (Colo.App.2002). Or, an insured might purchase UM/UIM coverage on multiple vehicles, thereby receiving coverage for Class Two insureds in each of those vehicles as well.

209 P.3d at 1183.

Hence, *Briggs's* holding does not contradict our interpretation of *DeHerrera*. Instead, it reinforces it. What *Wagner* and *Briggs* called "Class two" insureds (and *DeHerrera* called "third class") will have UM/UIM coverage when injured in an accident involving a vehicle that is actually insured under the policy, and not otherwise.

The final case we must address is *Bernal v. Lumbermens Mutual Casualty Co.,* 97 P.3d 197 (Colo.App.2003). In that case, which involved a commercial auto insurance policy similar to the one involved here, a division of this court affirmed a summary judgment against the insurance company that had imposed UM/UIM coverage despite clear policy provisions excluding coverage for the vehicle involved in the accident.

Bernal, an employee of Pepsi Bottling Company, was acting in the course and scope of his employment while driving a truck registered to Pepsi when he was injured in an accident involving a negligent, underinsured motorist. Lumbermens insured the truck for liability for anyone "using any company vehicle with permission," but Pepsi had elected UM/UIM coverage "for persons 'occupying' its 'owned private passenger "autos" only.' Thus, the UM/UIM coverage did not include the Pepsi truck involved in the accident." *Id.* at 199. The trial court had concluded that the provision limiting UM/UIM coverage to private passenger autos was void under section 10–4–609 because that statute does not allow the scope of UM/UIM coverage to be more limited than the scope of general liability coverage.

On appeal, the division affirmed, but on slightly different grounds. It held that, under *DeHerrera,* public policy precludes an insurer from restricting UM/UIM coverage according to type of vehicle, even if requested by the policyholder. Thus, the UM/UIM coverage provided in the Lumbermens policy, for private passenger autos only, had to extend to the involved truck. The rationale for the holding was the division's understanding that *DeHerrera* could have been resolved merely by reiterating the holding in *McMichael* that the classes of insureds for liability and UM/UIM purposes must be treated the same, but that the *DeHerrera* court had gone beyond the *McMichael* analysis and "enunciate[d] a public policy ... that voids all type of vehicle restrictions on UM/UIM coverage." *Id.* at 203.

The Family understandably relies heavily upon *Bernal* and argues that the "type of vehicle restriction" *Bernal* held could not preclude UM/UIM coverage is identical to the policy requirement here that the vehicle must be a "covered auto" for UM/UIM insurance to apply to persons other than the named insured and resident relatives.

To the extent that the *Bernal* division's language can be interpreted to mean that *all* "vehicle restrictions" are void, regardless of the class of insureds involved, we think the division's holding would go too far. As analyzed previously, we understand the *DeHerrera* holding to be limited to individual named insureds and relatives of the named insureds, and it does not apply to the "third class" of persons.

In addition, the *Bernal* holding determined that a restriction to personal autos in the Lumbermens policy for UM/UIM coverage

was a "vehicle type" restriction because it precluded coverage for a truck. Here, in contrast, there is no "vehicle type" restriction—the policy insures all kinds of vehicles, both trucks and private passenger cars, as long as they are listed in the schedule of autos or added to the policy within thirty days of their purchase.

Further, the *Bernal* division could have resolved the issue in the same way that the trial court did—by holding that the UM/UIM statute does not allow the scope of UM/UIM coverage to be more limited than the scope of general liability coverage—because the insurance policy there provided liability coverage for anyone using *any* company vehicle with permission. To the extent the *Bernal* division went beyond that rationale to hold that *all* types of vehicle restrictions on UM/UIM coverage are void for *all* classes of insureds, we decline to follow it, because it is inconsistent with our reading of *DeHerrera*. *See Ochoa v. Vered*, 186 P.3d 107, 112–13 (Colo. App.2008) (one division of the court of appeals is not bound by the decision of another division), *vacated and remanded to* 212 P.3d 963 (Colo.App.2009).

The Family nevertheless contends that the insurance policy here does not allow for any "Class one" insureds; that is, the policy requires occupancy of a covered vehicle for even the "named insured" to be covered for UM/UIM, which is contrary to *DeHerrera*. Because we have construed the rule of *DeHerrera* to extend only to individual named insureds and their resident relatives, however, this contention lacks merit.

We therefore conclude that public policy and the UM/UIM statute do not operate to provide coverage to Naeve here.

## IV. Policy Ambiguity

The Family contends that Naeve should have UIM coverage pursuant to the liability section definition of "who is an insured" because that provision is ambiguous. We disagree.

### A. Applicable Law

Unless there is an ambiguity in the policy language, the policy must be enforced as written. *Management Specialists, Inc. v. Northfield Ins. Co.*, 117 P.3d 32, 35 (Colo.App.2004). A policy provision is ambiguous if it is reasonably susceptible on its face to more than one interpretation. *See Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo.1994).

In determining whether there is an ambiguity in a policy provision, we evaluate the policy as a whole and construe the language in harmony with the plain meaning of the words employed. A mere disagreement between the parties regarding the meaning of a policy term does not create an ambiguity. *State Farm Mut. Auto. Ins. Co. v. Stein*, 940 P.2d 384, 387 (Colo.1997).

If an ambiguity exists, the policy language must be construed against the drafter of the document and in favor of providing coverage to the insured. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).

### B. Application

Here, as previously noted, the policy provides liability coverage to insured persons and states that "the following are ' "insureds": a. You for any covered 'auto'; b. Anyone else while using with your permission a covered 'auto' you own." The Family asserts that the phrase "you for any" is susceptible to many interpretations: that the insured is (1) anyone driving an insured vehicle; or (2) a passenger in a borrowed vehicle; or (3) anyone "using" a vehicle; or (4) anyone occupying a vehicle. We cannot agree.

The Family's attempt to find ambiguity is deficient in one very important respect. It omits the language "covered auto" from the argument. We cannot read words and phrases in isolation. Instead, we must evaluate the policy parts as a whole and construe the language in harmony with the plain meaning of the words employed. *See Stein*, 940 P.2d at 387. Regardless of how broadly "you for any" might be read (to include Statewide's employees, officers, agents, shareholders, or members of the board of directors), the restrictive phrase "covered auto" makes it clear that such a vehicle must be involved. Accordingly, here, we perceive

no ambiguity in the liability designation of "who is an insured."

The Family's reliance upon *Nationwide Mutual Insurance Co. v. Mrs. Condies Salad Co.*, 141 P.3d 923 (Colo.App.2006), is misplaced. In that case, a division of this court held that misrepresentations by an insured regarding the true ownership of a vehicle insured under a business auto policy were not material. The insurance policy at issue there, as here, described one category of "insureds" as "You for any covered 'auto.'" *Id.* at 926. But in contrast to the policy at issue here, the insurance coverage there defined "covered auto" as "any auto." The division concluded that, under those provisions, Nationwide had assumed driver-specific risk for any auto, and thus, it did not matter who owned the vehicle the insured was driving on the date of the accident. *See id.* Here, the converse is true.

Moreover, the vehicle at issue in Nationwide was specifically described in the policy, whereas here, the truck was not added until after the accident had occurred.

## V. Sign Board Trailer

 Finally, the Family contends that Naeve was "using" the flashing sign board and its trailer at the time of the accident, and that the trailer was a "covered auto" under the liability provisions. However, because the Family did not assert this argument in the trial court, we decline to address it here. *See Snowmass Land Co. v. Two Creeks Homeowners' Ass'n*, 159 P.3d 662, 665 (Colo. App.2006) (court will decline to address arguments not first made in the trial court).

The judgment is affirmed.

Judge FURMAN and Judge TERRY concur.