FILED
United States Court of Appeals
Tenth Circuit

December 29, 2014

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KATHRYN KIPLING,

      Plaintiff - Appellee,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, d/b/a Minnesota Division of
State Farm Mutual Automobile Insurance
Company,

      Defendant - Appellant.

No. 13-1389

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:11-CV-01948-BNB-CBS)**

---

Franklin D. Patterson of Frank Patterson & Associates, P.C., Greenwood Village, Colorado, for Defendant - Appellant.

Bradley A. Levin (Kerri J. Atencio with him on the brief), of Roberts Levin Rosenberg PC, Denver, Colorado, for Plaintiff - Appellee.

---

Before **BRISCOE**, Chief Judge, **HARTZ** and **HOLMES**, Circuit Judges.

---

**HARTZ,** Circuit Judge.

## I.    INTRODUCTION

The question before us is one of conflict of laws.  Plaintiff Kathryn Kipling sued State Farm Automobile Insurance Company in Colorado federal district court for breach of contract because it did not pay her benefits under four insurance policies issued in Minnesota.  The court determined that she would be entitled to benefits under Colorado law but not under Minnesota law.  It then applied tort conflict-of-laws principles to rule that Colorado law governed.  We hold that the court erred by not applying contract conflict-of-laws principles.  With appellate jurisdiction under 28 U.S.C. § 1291, we reverse the judgment below and remand for further consideration.

## II.    BACKGROUND

Plaintiff and her husband Christopher Kipling resided in Colorado.  On July 27, 2009, she was injured and he was killed in a motor-vehicle collision in Colorado.  Their vehicle was a 2005 Chevy Suburban provided by Mr. Kipling's employer, Quicksilver Express Courier, Inc. (Quicksilver), for his business and personal use.  Quicksilver is incorporated in Minnesota but has a wholly owned subsidiary in Colorado, Quicksilver Express Courier of Colorado, Inc. (Quicksilver Colorado).

The sole cause of the accident was the negligence of the driver of the vehicle that collided with the Suburban.  But the driver of that vehicle had inadequate liability insurance to cover the Kiplings' damages.  Plaintiff therefore sought underinsured motorist (UIM) benefits under several State Farm policies.  The obvious policy to collect

on was the policy on the Suburban issued in Colorado to Quicksilver (although the address on the policy was that of Quicksilver Colorado). State Farm paid the UIM benefits available under that policy and also under a separate policy issued in Colorado by State Farm to Quicksilver on a 2005 Ford pickup.

The dispute in this case concerns Plaintiff's request for additional UIM benefits under four State Farm policies issued in Minnesota to Quicksilver (the Minnesota Policies). The address for Quicksilver on the policies was in Minnesota. The policies insured four vehicles provided to four Minnesota employees of Quicksilver. They were obtained through an insurance agent in Minnesota but executed by State Farm in Illinois. Neither Plaintiff nor her husband was a named insured on any policy, and the vehicles were never driven in Colorado. Each of the policies describes the covered vehicle on the declaration page as "YOUR CAR," Aplee. Supp. App. at 107, 113, 119, 125, and the UIM coverage provision defines *insured* to mean "any person while occupying: (a) your car; (b) a newly acquired car; or (c) a temporary substitute car," *id.* at 110, 116, 122, 128 (emphasis omitted). Under this provision the Kiplings would not be eligible for UIM coverage under any of the Minnesota policies because they were not occupying any of the insured vehicles when they were injured. State Farm denied the claims.

On July 27, 2011, Plaintiff filed in the United States District Court for the District of Colorado a breach-of-contract claim against State Farm, invoking diversity jurisdiction, 28 U.S.C. § 1332, and seeking payment of UIM benefits. State Farm filed a motion for summary judgment arguing that Minnesota law applied and prohibited

3

stacking of UIM policies (that is, obtaining UIM benefits under more than one policy) and that the Kiplings did not meet the definition of *insured* under the language of the policies. Plaintiff argued that Colorado law applied, permitted stacking, and prohibited a policy from limiting UIM coverage to those occupying the covered vehicle at the time of the accident, as in the Minnesota policies. The parties did not dispute that if Minnesota law applied, Plaintiff was not entitled to coverage. The district court denied the summary-judgment motion, agreeing with Plaintiff that Colorado law applied.

After denying a motion for reconsideration by State Farm, the district court conducted a jury trial to determine damages and entered judgment on the verdict. State Farm filed a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e), arguing that even under Colorado law it would not have to pay UIM benefits because Colorado law did not prohibit the policy from tying UIM coverage to occupancy of the insured vehicle. The district court denied the motion as "an improper attempt to advance a new argument which could and should have been raised prior to trial and the entry of judgment." Aplt. App., Vol. 2 at 311. It further stated that even if the motion had been appropriate, the court did not agree that Colorado law required altering the judgment.

State Farm raises two arguments on appeal: (1) even under Colorado law the Minnesota Policies would not provide UIM benefits to Plaintiff because Colorado law does not prohibit tying UIM coverage to occupancy of the insured vehicle and (2) the district court erred in applying tort conflict-of-laws principles in resolving which state's substantive law governed Plaintiff's claim. We reject the first argument because it was

4

not timely raised below. But we agree with the second and therefore reverse and remand for the district court to apply contract conflict-of-laws principles to determine whether Minnesota or Colorado substantive law governs.

## III.   DISCUSSION

### A.   Coverage Under Colorado Law

State Farm contends on appeal that the district court erred in concluding that Colorado law prohibits tying UIM coverage to occupancy of the insured vehicle. It argues that "the policy provisions which define an insured as a person occupying the business named insured's vehicle as shown on the declaration page are valid and not contrary to the [Colorado UIM] statute nor public policy in Colorado." Aplt. Br. at 18. It recognizes that *DeHerrera v. Sentry Insurance Co.*, 30 P.3d 167 (Colo. 2001), said that the UIM statute "require[s] an insurer to provide [UIM] benefits . . . without regard to the vehicle occupied by the insured at the time of injury," *id.* at 169, so that the insurer in that case could not decline UIM benefits to the son of a named insured on the ground that the son, who was injured while riding a motorcycle, did not occupy the insured automobile when he was injured. But State Farm asserts that *Farmers Insurance Exchange v. Anderson*, 260 P.3d 68, 79 (Colo. App. 2010), interpreted *DeHerrera* as permitting policies to define *insured* based on occupancy in the insured vehicle so long as the person seeking coverage is not the named insured or a resident relative.

The argument is a respectable one, perhaps even correct. But we do not address it. When State Farm raised it in its Rule 59(e) motion, one of the grounds on which the

5

district court rejected it was that it was untimely. We review a denial of a Rule 59(e) motion for abuse of discretion. *See Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008). And we hold that the district court did not abuse its discretion in ruling the motion untimely.

State Farm does not dispute that a motion for reconsideration under Rule 59(e) "is not appropriate to . . . advance arguments that could have been raised in prior briefing." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). But it contends that it had presented the argument before its motion. The district court did not think so. And the record supports the court.

Our review of the record indicates, as the district court found, that State Farm had never previously raised the argument in its Rule 59(e) motion that Colorado law permitted its policy provision limiting UIM coverage to persons occupying the insured vehicle when injured. In its motion for summary judgment, State Farm advanced three arguments: (1) Minnesota law applied and prohibited stacking of UIM policies; (2) the Suburban was not a covered vehicle under the language of the Minnesota Policies; and (3) the Kiplings did not meet the definition of *insured* under the language of the Minnesota Policies. None of State Farm's arguments addressed Colorado law; they assumed that Minnesota law applied. The opening paragraph of the motion's Conclusion section makes this clear:

> Both under the effective choice of law provision in the Minnesota policy contracts, and applying the most substantial relationship test, Minnesota law would apply to this question of contract interpretation and

6

> Plaintiff would not be allowed to stack the UIM coverages of the four vehicles and would be exclusively limited in her recovery to the UIM coverage for the vehicle she was occupying at the time of the accident—the 2005 Chevrolet Suburban.

Aplt. App., Vol. 1 at 43.

In response, Plaintiff expressly advanced the opposite of what State Farm now asserts, saying that "State Farm's attempt to tie Mr. Kipling's entitlement to UIM benefits to the car he was occupying at the time of the accident is prohibited under Colorado law." *Id.* at 98. State Farm's reply brief did not challenge this assertion of Colorado law but merely reiterated its view that "Minnesota law applies, and it permits the language in the policy." *Id.* at 126.

Likewise, at the hearing on summary judgment State Farm did not respond to Plaintiff's contention that under Colorado law, coverage is "person oriented rather than vehicle oriented." *Id.* at 173. Indeed, when the court asked whether, if Colorado law governed, it would matter "whether Mr. Kipling was in your car as the insurance policies define that because Colorado law would prohibit tying coverage to a particular automobile," *id.* at 150, State Farm responded that "if he qualifies as an insured under a Minnesota policy and Colorado law applies then it doesn't matter what vehicle that insured might be in under Colorado law," *id.* at 150–51. And after Plaintiff agreed "that if Minnesota law applies then under the anti-stacking rules the plaintiffs have received everything to which they're entitled," *id.* at 151, State Farm acknowledged that the only

7

issue was which state's law applied. It later responded to the Court, "Generally, what the

Court's asking is does—which law applies and I agree that that's the issue." *Id.* at 153.

State Farm's pretrial motion for reconsideration of the summary-judgment ruling

went no further. It argued only that the district court erred in its conflict-of-laws analysis

and reiterated that "the central dispute in the matter" was "whether Colorado or

Minnesota law" applied. *Id.*, Vol. 2 at 202 (internal quotation marks omitted). And State

Farm's reply in support of the motion stated Colorado law on UIM coverage in

conformity with Plaintiff's views and argued that applying Colorado law to the

Minnesota Policies would produce unacceptable results. In its order on the motion for

reconsideration, the court naturally stated that "it is undisputed that under Colorado law

State Farm is not allowed to tie its underinsured motorist coverage to occupancy in a

particular automobile." *Id.* at 241 (citing *DeHerrera*, 30 P.3d 167).

State Farm points to its motion for a directed verdict at trial. But that motion only

renewed State Farm's previous arguments made in its motions for summary judgment

and reconsideration. Also, we reject State Farm's assertion that Plaintiff conceded in her

response to the Rule 59(e) motion that it had raised this issue of Colorado law.

Because the district court properly determined that State Farm had failed to raise

its Colorado-law argument before its Rule 59(e) motion, we conclude that the court did

not abuse its discretion in denying the motion as untimely.

## B. Conflict of Laws

We review conflict-of-laws determinations de novo. *See Mitchell v. State Farm Fire & Cas. Co.*, 902 F.2d 790, 792 (10th Cir. 1990). In a diversity action we apply the conflict-of-laws rules of the forum state. *See TPLC, Inc. v. United Nat'l Ins. Co.*, 44 F.3d 1484, 1490 (10th Cir. 1995). Accordingly, we apply the conflict-of-laws rules of Colorado.

Colorado follows the Restatement (Second) of Conflict of Laws (1971) (the Restatement) for both contract and tort actions. *See Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979) (contract actions); *First Nat'l Bank v. Rostek*, 514 P.2d 314, 448–49 (Colo. 1973) (tort actions); *see also AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507 (Colo. 2007) (following Restatement § 171 with regard to prejudgment interest); *Ficor, Inc. v. McHugh*, 639 P.2d 385, 391 (Colo. 1982) (following Restatement § 299 with regard to dissolution of corporation); *Dworak v. Olson Constr. Co.*, 551 P.2d 198, 199 (Colo. 1976) (following Restatement § 170 in applying tort conflict principles to covenant not to sue joint tortfeasors).

The general approach of the Restatement is set forth in § 6. It states that, absent a statute governing the choice of law, the relevant factors for selecting which state's substantive law to apply include:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement § 6.

The Restatement provides further guidance with respect to particular causes of

action.  For tort actions the Restatement provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are
> determined by the local law of the state which, with respect to that issue,
> has the most significant relationship to the occurrence and the parties under
> the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to
> determine the law applicable to an issue include:
>
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place
> of business of the parties, and
> (d) the place where the relationship, if any, between the parties is
> centered.

*Id.* § 145.

And for contract actions, in the absence of a contractual agreement on the choice

of law (which is governed by § 187), it states:

> (1) The rights and duties of the parties with respect to an issue in contract
> are determined by the local law of the state which, with respect to that
> issue, has the most significant relationship to the transaction and the parties
> under the principles stated in § 6.
>
> (2) In the absence of an effective choice of law by the parties (see § 187),
> the contacts to be taken into account in applying the principles of § 6 to
> determine the law applicable to an issue include:
>
> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,

10

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

*Id.* § 188.

The Restatement specifically addresses "Contracts of Fire, Surety or Casualty Insurance" in § 193. The term *casualty insurance* includes "theft insurance, liability insurance, collision insurance, workmen's compensation insurance and fidelity insurance." *Id.* § 193 cmt. a. The rule stated in the section is:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

*Id.* § 193.

The claim in the case before us is one for breach of contract—in particular, the breach of an insurance contract. Therefore, we readily conclude that Colorado would apply contract conflict-of-laws principles. Contract principles are "applicable to all contracts and to all issues in contract." *Id.* § 186 cmt. a.

The district court thought that the Colorado Court of Appeals decision in *Ranger v. Fortune Ins. Co.*, 881 P.2d 394, 395 (Colo. App. 1994), requires otherwise. We respectfully disagree. In *Ranger* the plaintiff sought punitive and treble damages from an automobile-liability insurer for bad-faith refusal to pay personal-injury-protection (PIP) benefits. *See id.* at 394. The insurer argued that under Florida law it was not required to

11

pay the benefits. *See id.* at 395. The trial court agreed and the plaintiff appealed, arguing that the trial court should have applied Colorado law. *See id.* The Court of Appeals applied Colorado law and reversed. It held that tort conflict-of-law principles governed the dispute, and that Colorado "had the most significant relationship with the occurrence and the parties." *Id.* The court relied on comment (c) to Restatement § 145 to support the proposition that "the state where the injury occurred, which is often where the plaintiff resides, may have the greater interest in the controversy," *id.*; and it noted that the purpose behind the PIP statute was "to avoid inadequate compensation to victims of automobile accidents," *id.*

But there is a critical difference between *Ranger* and this case. A bad-faith claim against an insurer, as in *Ranger*, sounds in tort. *See Farmers Grp., Inc. v. Williams*, 805 P.2d 419, 421 (Colo. 1991). The distinction between a claim on an insurance contract and a bad-faith claim against an insurer was recognized in a diversity case arising in Colorado that came before this court. In *TPLC,* 44 F.3d 1484, the plaintiff sued its insurer for both breach of contract and bad-faith breach of an insurance contract. Applying Colorado conflict-of-laws principles, we employed the tort principles of Restatement § 145 to determine that Pennsylvania law governed the bad-faith claim, *see id.* at 1495–96, and the contract principles of Restatement § 188 to determine that Colorado law applied to the breach-of-contract claim, *see id.* at 1490–91.

Plaintiff relies on the policy reasons behind Colorado's UIM statute as requiring that state's law to govern here. But the forum state's public policy, which is always a

12

consideration under the Restatement, *see* § 6(b), is not a factor in deciding *which* conflict-of-laws principles—those for tort, contract, or otherwise—govern.  It is simply one element to be considered along with others once the set of governing principles has been chosen.

We are fortified in our view by the apparently uniform practice of those courts following the Restatement to apply contract conflict-of-laws principles to claims for benefits under automobile-insurance contracts.  *See, e.g.*, *Miller v. State Farm Mut. Auto Ins. Co.*, 87 F.3d 822, 824–25 (6th Cir. 1996) (uninsured-motorist coverage); *Walker v. State Farm Mut. Auto Ins. Co.*, 973 F.2d 634, 636–37 (8th Cir. 1992) (uninsured-motorist coverage); *Nichols v. Anderson*, 788 F.2d 1140, 1142 (5th Cir. 1986) ("starting point for . . . inquiry [under Mississippi law] is § 193 of the Second Restatement") (emphasis omitted); *Reliance Ins. Co. v. Calderon*, 685 F. Supp. 72, 75 (S.D.N.Y. 1988); *Nat'l Union Fire Ins. Co. v. Binker*, 665 F. Supp. 35, 40 (D.D.C. 1987); *Am. States Ins. Co. v. Allstate Ins. Co.*, 922 A.2d 1043, 1047 (Conn. 2007) ("choice of law determination in [automobile-insurance] case involves an interplay among §§ 193, 188, and 6"); *Johnson v. U.S. Fid. & Guar. Co.*, 696 N.W.2d 431, 441 (Neb. 2005) ("[underinsured-motorist] coverage . . . is governed by the Restatement's conflict-of-law provisions for contract"); *Ohayon v. Safeco Ins. Co.*, 747 N.E.2d 206, 211 (Ohio 2001) ("an action by an insured against his or her insurance carrier for payment of UIM benefits is a cause of action sounding in contract, rather than tort, even though it is tortious conduct that triggers applicable contractual provisions"); *Dairyland Ins. Co. v. State Farm Mut. Auto. Ins. Co.*,

701 P.2d 806, 808–09 (Wash. Ct. App. 1985); *see also Sotirakis v. United Serv. Auto. Ass'n*, 787 P.2d 788, 791 (Nev. 1990) (citing §§ 188 and 193 with approval).  As these cases illustrate, contract conflict-of-laws principles apply even though tort liability underlies any liability-insurance or UIM-insurance claim, and even though the court must consider statutes that override contract provisions on public-policy grounds.

Accordingly, we hold that contract conflict-of-laws principles apply to Plaintiff's breach-of-contract claim seeking UIM benefits under State Farm's insurance policies. Because the district court did not apply the conflict-of-laws principles applicable to contract actions, we remand to the court to apply those principles in the first instance.

## IV.  CONCLUSION

We REVERSE the decision of the district court and REMAND for further proceedings, including reconsideration of what state's substantive law governs this dispute.