**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TIFFANY GARGANO,

        Plaintiff - Appellant,

v.

OWNERS INSURANCE COMPANY,
d/b/a AUTO OWNERS INSURANCE
COMPANY,

        Defendant - Appellee.

No. 14-1361
(D.C. No. 1:12-CV-01109-CMA-BNB)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **McKAY** and **PHILLIPS**, Circuit Judges.

Tiffany Gargano appeals the district court's dismissal of her claims against

Owners Insurance Company ("Owners") alleging common-law bad-faith breach of an

insurance contract and unreasonable delay in violation of Colo. Rev. Stat.

§ 10-3-1115 and 10-3-1116.  Exercising jurisdiction under 28 U.S.C. § 1291, we

affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.   Background

Gargano was involved in an auto accident with another driver, Christine Rainey, on May 31, 2009.  She reported the accident to Owners on June 1, the following day.  Gargano's policy with Owners included coverage for damage to her vehicle, medical-payments coverage, and uninsured-motorist ("UM") coverage. Owners paid Gargano's claim for the damage to her car and began paying her medical expenses related to the accident.

Owners' records dated July 6 and August 13 reflect that it was aware that Rainey was uninsured.  *See* Aplt. App., Vol. 2 at 386, 392.  Gargano notified Owners on July 30 that she had retained counsel regarding the accident.  Her counsel initiated communications with Owners in August regarding her claim for UM coverage and continued to provide Owners with information regarding that claim over the next twelve months.

On August 28, Owners advised Gargano and two of her medical providers that she had exhausted her $5,000 medical-payments coverage.  *See id.* at 392.  Owners then stopped paying for her medical expenses.  It is undisputed that Owners did not, at this time, investigate or evaluate Gargano's claim for UM benefits.

Gargano filed an action against Rainey in state court on December 16, 2009 ("State Court Action").  She did not notify Owners of her State Court Action at that time.  Rather, she first advised Owners of her case against Rainey ten months later, through a letter dated October 14, 2010, which also attached copies of her medical

bills and records to date. Owners intervened in the State Court Action in December 2010. After the state court entered a default against Rainey in April 2011, the State Court Action proceeded to the damages phase, and discovery between Gargano and Owners continued. In October 2011, the state court held that Owners had a right to participate fully in the damages hearing, denying Gargano's motion to limit the evidence that Owners could present.

On April 26, 2012, Gargano filed this action against Owners, alleging claims for breach of contract; common-law, bad-faith breach of contract; and unreasonable delay in violation of Colo. Rev. Stat. § 10-3-1115 and 10-3-1116 ("Bad-Faith Action").[1] Her allegations related to Owners' failure, without any explanation, to pay her claim for UM benefits and Owners' conduct in litigating the State Court Action.

The state court held a damages hearing in May 2012, but it did not issue a ruling on damages until January 2013. At that point Gargano and Owners stipulated to a final judgment in the State Court Action, and Owners promptly paid Gargano the judgment amount.

The parties submitted a joint proposed pretrial order in the Bad-Faith Action in June 2013. Owners believed, based on that submission, that Gargano was attempting to introduce new claims she had not pled in her operative complaint, specifically that Owners had unreasonably delayed payment on her UM claim after she notified

---

[1]     Gargano later conceded that her breach-of-contract claim was mooted by Owners' payment of UM benefits. *See* Aplt. App., Vol. 4 at 1088. We refer to her other claims collectively as her "bad-faith/unreasonable-delay claims."

Owners of the accident on June 1, 2009. Gargano contended that, by notifying Owners of the accident, she had made a claim for UM coverage and triggered Owners' duties to investigate and evaluate that claim. In contrast, Owners had taken the contrary position that Gargano did not pursue a UM claim until she notified Owners in October 2010 that she had filed the State Court Action.[2]

Owners moved to strike Gargano's new claims, asserting that her previous bad-faith/unreasonable-delay allegations all related to Owners' conduct *after* Gargano notified Owners of the State Court Action in October 2010. A magistrate judge denied Owners' motion to strike in July 2013, and Owners did not seek review of that ruling by the district court.

In October 2013, Owners filed several motions in limine, seeking to exclude evidence at trial regarding its litigation conduct in the State Court Action, its duty to investigate prior to presentation of a valid claim, and its duty to negotiate a settlement, explain its claims decision, and pay any UM benefits before judgment was entered in the State Court Action.[3] In its reply brief supporting one of its motions, Owners raised for the first time the question whether the applicable statute

---

[2]   The district court ultimately sided with Gargano on this issue. *See* Aplt. App., Vol. 4 at 1083-85; *see also Rose Med. Ctr. v. State Farm Mut. Auto. Ins. Co.*, 903 P.2d 15, 17 (Colo. App. 1994) ("[W]e conclude that when an insurance carrier receives adequate notice of a claim under one policy or coverage, it has notice as to all coverages when . . . the information contained in the notice is sufficient for both.").

[3]   The parties filed additional motions in limine, the resolutions of which are not relevant to the issues on appeal.

- 4 -

of limitations barred Gargano's bad-faith/unreasonable-delay claims based on Owners' failure to investigate and evaluate her UM claim after notification of the accident in June 2009. On October 29, 2013, the district court ordered the parties to submit simultaneous briefing on "whether Plaintiff's claims that Defendant acted in bad faith and violated C.R.S. §§ 10-3-1115 and -1116 by failing to investigate a potential UM claim in August 2009 is barred by the statute of limitation and/or whether Defendant has waived reliance on this defense." Aplt. App., Vol. 5 at 1316 (internal quotation marks omitted).

Gargano filed a brief in response to that order. But Owners filed a motion for leave to amend its answer to add a statute-of-limitations defense ("Amendment Motion"). During the final pretrial conference on November 1, 2013, the district court granted in part and denied in part Owners' motions in limine. On November 6, the court vacated the jury trial which was scheduled to begin on November 18. The court stated:

> This matter is before the Court *sua sponte*. The Court notes that in the last month, on the eve of trial, the parties have filed eleven motions in this case. Although some are motions in limine which are appropriately filed on the eve of trial, others raise substantive issues of great consequence to the case which should have been raised well in advance of trial in order to allow the Court time to address the issues in a thoughtful, rather than rushed, manner.

Aplt. App., Vol. 4 at 1105. The court also gave Gargano 21 days to file a response to Owners' Amendment Motion.

On March 18, 2014, the district court granted the Amendment Motion. The court first held there was good cause to modify the scheduling order under Fed. R. Civ. P. 16(b)(4). It found, based on the allegations in Gargano's operative complaint, that Owners had reasonably believed that her claims related solely to Owners' conduct in 2010 and 2011, and therefore a statute-of-limitations defense was not viable when Owners answered that complaint. The court also held that Owners established a good-faith basis to amend its answer under Fed. R. Civ. P. 15(a)(2).

Addressing Owners' statute-of-limitations defense, the court first construed its previous rulings on Owners' motions in limine as excluding all evidence regarding Owners' conduct after its intervention in the State Court Action. *See* Aplt. App., Vol. 5 at 1315 (stating the court's determination "that the only evidence it would admit at trial would concern conduct prior to Defendant's intervention in the state court proceedings on December 2, 2010"). The court held that Gargano was required to file her remaining, pre-intervention bad-faith/unreasonable-delay claims within two years of when those claims accrued. Under Colorado law, Gargano's claims accrued "when the injury, loss, damage, or conduct giving rise to the cause of action is discovered or should have been discovered by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-80-108(8). The court held that Gargano knew or should have known of her bad-faith/unreasonable-delay claims regarding her UM benefits no later than 2009, and more specifically by July 31, 2009, when she retained counsel to represent her regarding the accident. Consequently, her claims

- 6 -

were time-barred when she filed them more than two years later on April 26, 2012. The court therefore entered judgment dismissing Gargano's action with prejudice.

Gargano filed a motion under Fed. R. Civ. P. 59(e), seeking reconsideration of the district court's ruling dismissing her claims. She also asked the court to reconsider its evidentiary rulings, or alternatively, to certify questions to the Colorado Supreme Court. The district court denied Gargano's motion. It rejected her contentions of error regarding its determination of when her pre-intervention bad-faith/unreasonable-delay claims accrued. The court also held that Gargano failed to allege in her complaint any separate and distinct bad-faith/unreasonable-delay claim based on Owners' conduct in 2010 that was not precluded by the court's orders on Owners' motions in limine. Gargano filed a timely notice of appeal.

## II.    Discussion

Gargano raises two main issues on appeal: (1) the district court erred in granting Owners' Amendment Motion, permitting Owners to add a statute-of-limitations defense; and (2) the court erred in granting summary judgment based on the statute of limitations. She advances four contentions of error in the district court's summary-judgment ruling: (a) Owners' Amendment Motion failed to satisfy Owners' initial burden under Rule 56; (b) a factual dispute regarding the parties' communications between the date that Gargano hired counsel (in July 2009) and the date that her counsel notified Owners of the State Court Action (in October 2010) precluded summary judgment; (c) the court erred as a matter of law in determining when Gargano's bad-faith/unreasonable-delay claims

accrued; and (d) the court erred in holding that Gargano failed to allege a viable, independent bad-faith/unreasonable-delay claim that accrued after she notified Owners of the State Court Action.

## A. The District Court Did Not Err in Granting Owners' Amendment Motion

"We review a district court's decision to grant leave to amend for abuse of discretion." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009). Gargano's argument on this issue in her opening brief is quite narrow. She contends that Owners failed to explain why it delayed six months in filing its Amendment Motion after it learned that she was pursuing a claim regarding Owners' failure to investigate and evaluate her UM claim after she notified Owners of the accident in June 2009. She maintains that unexplained delay is, by itself, a sufficient basis to deny a motion to amend; therefore, the district court abused its discretion by granting the Amendment Motion without considering Owners' unexplained delay.

We disagree. First, Gargano is mistaken that Owners' provided *no* explanation for its delay in filing its Amendment Motion. Owners explained that it initially moved to strike Gargano's new claims included in the final pretrial order. But Gargano is correct that Owners did not immediately file the Amendment Motion when its motion to strike was denied. Yet Gargano still fails to demonstrate an abuse of discretion. She cites cases in which this court upheld the *denial* of a motion to amend based on the movant's unexplained delay. *See, e.g., Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010) ("We have held that denial of leave to amend is appropriate when the party filing the

- 8 -

motion has no adequate explanation for the delay." (internal quotation marks omitted)). But her cases do not hold that a court abuses its discretion by *granting* a motion to amend despite some unexplained delay. Rather, we rejected Gargano's contention in *Bylin*, noting that "[t]he question before us . . . is not whether a district court's *denying* leave to amend was appropriate, but whether its *granting* leave to amend was sufficiently arbitrary, capricious, whimsical, or manifestly unreasonable as to constitute an abuse of discretion." 568 F.3d at 1229 (internal quotation marks omitted). In *Bylin*, we affirmed the district court's grant of a late amendment of the defendant's answer to add a statute-of-limitations defense, because the plaintiffs had "received adequate notice of the statute-of-limitations defense and had ample opportunity to respond." *Id*. at 1230.

Here, the district court was fully aware of the timeline regarding Gargano's assertion of new claims and Owners' assertion of its statute-of-limitations defense in response. Gargano does not show that, based solely on Owners' unexplained delay, the district court lacked discretion to grant Owners' Amendment Motion.[4]

### B. The District Court did not Err in Granting Owners Summary Judgment on its Statute-of-Limitations Defense

After permitting Owners to amend its answer to add a statute-of-limitations defense, the district court held that Gargano's pre-intervention, bad-faith/unreasonable-delay claims were time-barred and dismissed her action.

---

[4] Gargano argues in her reply brief that she was prejudiced by the district court's grant of Owners' Amendment Motion. But we do not ordinarily address arguments made for the first time in an appellant's reply brief. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000). We decline to do so here.

Although the court did not explicitly state it was granting Owners summary judgment on that defense, the parties agree that we should construe the district court's ruling as a grant of summary judgment. We therefore review the district court's decision de novo. *See Bass v. Potter*, 522 F.3d 1098, 1102 (10th Cir. 2008) (applying de novo review to summary judgment ruling based on statute of limitations). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### 1. The Procedural Defects in Owners' Amendment Motion Did Not Preclude the District Court from Granting Summary Judgment

Gargano first contends that the district court erred in granting Owners summary judgment because the Amendment Motion did not satisfy Owners' initial burden under Rule 56. More specifically, she argues that Owners failed to identify the portions of the record it relied on in asserting the absence of a genuine issue of material fact, and failed to set forth a legal basis why Owners was entitled to judgment as a matter of law.[5] Gargano contends these procedural deficiencies precluded the district court from granting summary judgment in Owners' favor on its statute-of-limitations defense.

For this proposition, Gargano cites a decision from our sister circuit: *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (stating "[i]f the moving party fails to meet this initial burden, the motion must be denied,

---

[5] We agree that Owners' Amendment Motion failed to provide record citations supporting its factual assertions. But the motion did set forth a legal basis for judgment in Owners' favor.

- 10 -

regardless of the nonmovant's response." (internal quotation marks omitted)). But that decision fails to acknowledge the flexibility built into Rule 56. Rule 56(c)(3) allows the district court to consider materials in the record not cited by the movant. Rule 56(e) permits the court to grant summary judgment or issue any other appropriate order despite the movant's failure to support an assertion of fact as required by Rule 56(c). And Rule 56(f)(3) allows the court to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Indeed, a district court may grant summary judgment sua sponte "if the losing party was on notice that she had to come forward with all of her evidence," and "we will still affirm a grant of summary judgment if the losing party suffered no prejudice from the lack of notice." *Johnson v. Weld Cty.*, 594 F.3d 1202, 1214 (10th Cir. 2010) (internal quotation marks and bracket omitted). Thus, contrary to Gargano's contention, the procedural deficiencies in Owners' Amendment Motion did not *require* the district court to deny a grant of summary judgment.[6]

### 2. The District Court did not Err in Determining when Gargano's Bad-faith/Unreasonable-delay Claims Accrued

The parties agree that a two-year statute of limitations applies both to Gargano's common-law, bad-faith tort claims and to her statutory unreasonable-delay claims. *See* Colo. Rev. Stat. § 13-80-102(1)(a) (applying two-year limitations period to tort

---

[6] Gargano argues in her reply brief that the district court entered summary judgment against her sua sponte without sufficient notice and that she was prejudiced by the unfair surprise. But again, we do not address arguments made for the first time in a party's reply brief.

- 11 -

claims).  Gargano contends that Owners' duties to investigate and evaluate her UM claim commenced when she notified Owners of the accident on June 1, 2009.  For purposes of its statute-of-limitations defense, Owners does not dispute that notice of the accident triggered these duties.  The district court determined that Gargano knew or should have known of her bad-faith/unreasonable-delay claims regarding her UM benefits no later than 2009, and more specifically by July 31, 2009, when she retained counsel to represent her regarding the accident.  Therefore, the court held that her claims were time-barred when she filed them more than two years later on April 26, 2012.

Gargano argues that material fact issues regarding the parties' communications after she retained counsel in July 2009 precluded summary judgment, and that the court misapplied Colorado law in determining when her bad-faith/unreasonable-delay claims accrued.

### a.    The Elements of Gargano's Bad-faith/ Unreasonable-delay Claims

"Bad faith breach of an insurance contract occurs in a first-party context when an insurer unreasonably denies or delays making payment on a valid claim of its insured." *Harmon v. Fred S. James & Co. of Colo., Inc.*, 899 P.2d 258, 260 (Colo. App. 1994).  In addition, "[t]he plaintiff must show that the insurer acted unreasonably and with either knowledge or reckless disregard of the unreasonableness of the conduct."  *Id.*

Under the Colorado unreasonable-delay statute, "[a] person engaged in the business of insurance shall not unreasonably delay . . . payment of a claim for benefits owed to or on behalf of any first-party claimant," and "an insurer's delay . . . was

- 12 -

unreasonable if the insurer delayed . . . authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(1)(a), (2). An insured "whose claim for benefits has been unreasonably delayed . . . may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit." *Id.* § 10-3-1116(1). The statutory standard for liability is less stringent than the common-law standard because the statute "deletes the requirement that an insurer knew that its delay or denial was unreasonable or the insurer recklessly disregarded the fact that its delay or denial was unreasonable." *Kisselman v. Amer. Fam. Mut. Ins. Co.*, 292 P.3d 964, 973 (Colo. App. 2011) (internal quotation marks and ellipsis omitted).

### b.      Accrual of Claims under Colorado Law

"A cause of action accrues on the date when 'the injury, loss, damage, or conduct giving rise to the cause of action is discovered or should have been discovered by the exercise of reasonable diligence.'" *Murry v. GuideOne Specialty Mut. Ins. Co.*, 194 P.3d 489, 491 (Colo. App. 2008) (quoting Colo. Rev. Stat. § 13-80-108(8)).

> The point of accrual requires knowledge of the facts essential to the cause of action, not knowledge of the legal theory supporting the cause of action. 'Actual knowledge' is knowledge of such information as would lead a reasonable person to inquire further. Plaintiffs are required to exercise reasonable diligence in discovering the relevant circumstances of their claims. They are judged on an objective standard that does not reward denial or self-induced ignorance.

*Id.* at 492 (citations and internal quotation marks omitted). Thus, "[a] cause of action has commonly been understood to 'accrue' when a suit may be maintained thereon." *Jones v.*

- 13 -

*Cox*, 828 P.2d 218, 224 (Colo. 1992); *see also Miller v. Armstrong World Indus., Inc.*, 817 P.2d 111, 113 (Colo. 1991) ("A claim for relief does not accrue until the plaintiff knows, or should know, in the exercise of reasonable diligence, all material facts essential to show the elements of that cause of action." (internal quotation marks omitted)).

Each of a defendant's acts can constitute "a separate and distinct tortious act for which the limitations period began to run when the plaintiff became aware of the injury and its cause." *Harmon*, 899 P.2d at 262. "The point of accrual is usually a question of fact, but if the undisputed facts clearly show when a plaintiff discovered or should have discovered the damage or conduct, the issue may be decided as a matter of law." *Murry*, 194 P.3d at 491.

### c. Gargano's Accrual Contentions

Gargano first argues that a disputed fact issue precluded the district court from granting summary judgment. She focuses on what she perceives as a meaningful discrepancy between two affidavits. Owners' affidavit says that Owners received no communication from Gargano after the July 30, 2009, letter stating that she had retained counsel, until her counsel notified Owners of the State Court Action in October 2010. In contrast, Gargano's affidavit says that her counsel initiated communications with Owners regarding her UM claim in August 2009 and continued to provide Owners information regarding that claim over the next twelve months.[7]

---

[7] We note that Gargano does not point to any evidence of these communications other than her counsel's general statement in an affidavit.

But even viewing the facts in the light most favorable to Gargano—i.e., that her counsel provided Owners with continuous information in support of her UM claim beginning in August 2009—her bad-faith/unreasonable-delay claims still accrued before the critical date of April 26, 2010 (two years before she filed her Bad-Faith Action). The crucial evidence is not merely the extent of communications *from* Gargano to Owners, but the *lack* of communication by Owners *to* Gargano that should have put her on notice that Owners was not processing her UM claim. And there is no factual dispute on the latter issue.

At the outset, we agree with Gargano that her bad-faith/unreasonable-delay claims did not accrue as early as July 2009, when she retained legal counsel. Within a mere two months of reporting the accident, Gargano had no reason to believe that Owners was delaying payment on her UM claim, much less *unreasonably* delaying that claim. Indeed, at that time Gargano had not exhausted her medical-payments coverage and Owners was paying her medical bills.

But Gargano presents no reasoned basis why her UM claim did not accrue some time before April 26, 2010, which was almost nine months after she retained counsel, and almost eleven months after she reported the accident to Owners. The relevant timeline is as follows: Gargano reported the accident to Owners on June 1. According to her counsel's affidavit, Gargano initiated communications with Owners regarding her UM claim in August 2009, and over the next twelve months continued to provide further information to Owners regarding the status of Gargano's medical condition and care. But

during that time, although Gargano indicated she was available, Owners did not interview her. Nor is there evidence that Owners asked Gargano to submit to examinations by physicians, as provided for under the UM coverage terms.

According to Owners' claim notes, during August 2009 Gargano was providing medical bills to Owners and Owners was paying her medical providers. But on August 28, Owners advised Gargano and two of her medical providers that she had exhausted her $5,000 medical-payments coverage. At that point, Owners stopped paying for her medical expenses.

Gargano then filed the State Court Action in December 2009, without notifying Owners. As of that time (more than six months after she notified Owners of the accident), there is no evidence that Owners had communicated with Gargano regarding its investigation or evaluation of her UM claim. Indeed, through the critical date in April 2010, there is no evidence of *any* communication *from Owners to Gargano* regarding her UM claim.

Owners' cessation of payments for Gargano's medical expenses in August 2009, followed by its complete lack of communication to Gargano regarding her UM claim, (despite her continuing to provide Owners with information on her medical care), should have caused her to inquire about the status of her UM claim. She does not point to any evidence that she did inquire, and she cannot rely on her self-induced ignorance to avoid the accrual of her claims. Objectively, as of the time Gargano filed the State Court Action in December 2009, but certainly no later than mid April 2010 (almost eleven

- 16 -

months after notifying Owners of the accident, which triggered Owners' duties to investigate and evaluate her claims), Gargano either knew, or should have discovered by the exercise of reasonable diligence, that Owners was not investigating and evaluating her UM claim and that Owners had no reasonable basis for failing to do so.

Gargano nonetheless argues that her bad-faith/unreasonable-delay claims could not accrue until she knew not only that Owners had delayed processing her UM claim, but also that Owners' *rationale* for its delay was not reasonable (and in the case of her common-law, bad-faith tort claim, that Owners knew or recklessly disregarded that its delay was unreasonable). She maintains that the existence of delay is not, in itself, sufficient to put her on notice of her bad-faith/unreasonable-delay claims. Rather, she maintains that her claims did not accrue until she had knowledge of Owners' *specific* reason for not processing her UM claim—that it did not recognize her report of the accident as asserting a UM claim. Gargano asserts that she did not learn of that basis for Owners' delay until September 2012, when Owners filed a summary judgment motion in the Bad-Faith Action.

Because Gargano raised this issue for the first time in her Rule 59(e) motion, our standard of review is abuse of discretion. *See Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1309 (10th Cir. 2014). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence

previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).[8]

The district court did not abuse its discretion in rejecting Gargano's claim of clear legal error. First, with a minimum of diligence before April 26, 2010, Gargano would have learned that Owners had done nothing to investigate and evaluate her UM claim. Second, for her claim to accrue, she needed to know (or should have known) "all material facts essential to show the elements of [her] cause of action," *Miller*, 817 P.2d at 113 (internal quotation marks omitted), but she did not need to know "the specific acts . . . committed by the defendant or . . . the details of the evidence which were necessary to prove the claim," *Mastro v. Brodie*, 682 P.2d 1162, 1169 (Colo. 1984). Thus, regarding causation the question is whether the plaintiff actually discovered or should have discovered that her damages "probably" resulted from the defendant's actions. *City of Aurora v. Bechtel Corp.*, 599 F.2d 382, 389 (10th Cir. 1979) (noting question in a malpractice case was whether plaintiff actually discovered or should have discovered that damage occurred and that it "probably" resulted from professional malpractice).

Here, more than ten months after she reported the accident to Owners, Gargano knew—or with reasonable diligence should have known—that Owners' delay in

---

[8]    In denying Gargano's Rule 59(e) motion, the district court initially noted that it was not obligated to revisit its claim-accrual determination because Gargano could have, but failed to raise her contention in her previous briefing on the statute-of-limitations issue. *See Kipling*, 774 F.3d at 1309-10 (finding no abuse of discretion in district court's denial of Rule 59(e) motion asserting a new contention). But the district court nonetheless proceeded to address her argument on the merits, and we elect to do so as well.

investigating and evaluating her UM claim was probably unreasonable, and that Owners

likely knew or recklessly disregarded the unreasonableness of its conduct. Indeed,

Gargano maintains that the law is clear that Owners' duties to investigate and evaluate

her UM claim were triggered by her accident report. And as the district court reasoned,

she cannot have it both ways—she cannot succeed on her argument that notice of the

accident triggered Owners' duties regarding her UM claim, but disavow any knowledge

or duty to inquire when Owners did not timely process that claim.

Gargano fails to show error in the district court's determination that her

pre-intervention, bad-faith/unreasonable-delay claims were time-barred when she filed

her Bad-Faith Action on April 26, 2012.

### 3. Gargano Fails to Show the District Court Erred in Holding all of her Post-Intervention Bad-Faith/Unreasonable-delay Claims were Precluded by the Court's In Limine Rulings

In its order granting Owners' Amendment Motion and dismissing Gargano's

action, the district court construed its previous rulings on Owners' motions in limine as

excluding all evidence regarding Owners' conduct *after its intervention* in the State Court

Action in December 2010. It then held that Gargano's remaining, pre-intervention claims

were barred by the statute of limitations.

Gargano argued in her Rule 59(e) motion that, in dismissing her claims,

> the [district court] failed to consider whether any other later event could
> have given rise to common law bad faith or statutory unreasonable delay
> claims. For example, Owner[]s admits that it knew of the UM claim in
> October[] 2010; thus, whatever reasons, reasonable or not, that Owners
> had to not proceed to adjust her UM claim in good faith ceased to exist
> as of October[] 2010. But Owners did not proceed to adjust her claim in

good faith. At that point, new claims for common law bad faith and unreasonable conduct arose.

Aplt. App., Vol. 5 at 1371. Gargano also asked the court to "reconsider its evidentiary ruling precluding the presentation of evidence that Owners failed to adjust her UM claim in good faith after it received notification [of the State Court Action]."[9] *Id.*

The district court denied Gargano's Rule 59(e) motion. It initially stated it need not address Gargano's contention regarding timely claims arising from Owners' 2010 conduct because Gargano failed to raise that issue in her briefing on the statute of limitations. But the court also proceeded to reject her argument on the merits. It held that Gargano failed, in her briefing on the statute of limitations, to point to specific conduct by Owners in 2010 giving rise to a separate and distinct bad-faith/ unreasonable-delay claim that was not precluded by the court's orders on Owners' motions in limine. The court found no such allegation in Gargano's operative complaint or in the final pretrial order. The court then declined Gargano's request to revisit its evidentiary rulings because she did not submit a separate motion for that relief and she merely restated her previous arguments that the court had previously rejected.

Gargano contends that, contrary to the district court's conclusion, she did assert a valid and independent bad-faith/unreasonable-delay claim arising after Owners received

---

[9] It is clear from the context that Gargano was referring to notice of the State Court Action, rather than notice of the accident. She further asserted that "presentation of evidence of litigation conduct by [an insurer's] attorneys and evidence of settlement offers by the insurer are generally precluded once litigation between the parties begins, [but] the insurer's duty of good faith otherwise continues unabated." Aplt. App., Vol. 5 at 1371 (citation omitted).

notification of the State Court Action. She points to her response to the Amendment Motion, in which she said that the theory of her case was predicated on Owners' unlawful delegation of its duties to investigate and evaluate her UM claim to its litigation counsel. Gargano contends this unlawful-delegation claim was encompassed in the final pretrial order, in which she alleged that Owners used its intervention in the State Court Action as a justification for not investigating and evaluating her UM claim. *See* Aplt. App., Vol. 2 at 524.

But even if Gargano did properly assert this claim, she fails to address the district court's further holding that the claim was precluded by the court's rulings on Owners' motions in limine, which excluded all evidence regarding Owners' conduct after its intervention in the State Court Action in December 2010. Although Gargano sought reconsideration of the court's evidentiary rulings in her Rule 59(e) motion, she fails to mention them in her opening appeal brief. She does not argue that the district court erred in deciding Owners' motions in limine, or that it abused its discretion in rejecting her request to revisit those rulings in her Rule 59(e) motion. Nor does she assert that the court erred in construing the scope and effect of those rulings in denying that motion. We therefore affirm the district court's denial of her Rule 59(e) motion on this unchallenged basis. *Cf. GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1388 (10th Cir. 1997) (affirming summary judgment on ground cited by the district court that appellant failed to address).

## III.    Conclusion

The judgment of the district court is affirmed.

Entered for the Court

Gregory A. Phillips
Circuit Judge