FILED
United States Court of Appeals
Tenth Circuit

July 15, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

TEAM SYSTEMS INTERNATIONAL,
LLC,

      Plaintiff - Appellant,

v.

JEFF HAOZOUS, a/k/a Jeff Houser,
individually and as President of Fort Sill
Apache Industries and Chief Executive
Officer of Fort Sill Apache Industries
Board of Directors; FORT SILL APACHE
INDUSTRIES BOARD OF DIRECTORS,
as Managers of Fort Sill Apache Industries;
FORT SILL APACHE INDUSTRIES,

      Defendants - Appellees.

No. 15-6101
(D.C. No. 5:14-CV-01018-D)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **HOLMES**, and **McHUGH**, Circuit Judges.
_____

Team Systems International, LLC (Team Systems) appeals the order

dismissing its breach-of-contract action under Fed. R. Civ. P. 12(b)(6) for failure to

state a claim upon which relief may be granted. We affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I.    BACKGROUND

Team Systems alleged that Fort Sill Apache Industries (FSAI) breached the parties' Engagement Agreement, under which FSAI agreed to pay contingent compensation to Team Systems if it obtained "financing" or a "strategic partner" for FSAI's construction contracts with the federal government. Specifically, the Engagement Agreement provided for Team Systems to receive compensation if FSAI "consummate[d] one or more financings with . . . a financing source introduced [to FSAI by Team Systems]," and if FSAI "reach[ed] an agreement with a strategic partner(s) introduced or developed for [FSAI] by [Team Systems]." Aplt. App. at 37. Team Systems arranged for payment and performance bonds on a government construction project awarded to FSAI. Aplt. Opening Br. at 6. In the event FSAI defaulted on the contract, the bond surety would either complete performance or finance its completion by paying subcontractors and suppliers. If FSAI did not default, the bond surety would have no obligation to contribute any sums to the project. Team Systems also introduced FSAI to Phillips & Jordan, Inc., the company that FSAI retained as the primary subcontractor for the project. FSAI and Phillips & Jordan entered into a lump sum contract for two phases of the project. When FSAI rejected Team System's demand for contingent compensation based on procurement of the bonds and the introduction of Phillips & Jordan, Team Systems brought this action for breach of contract.

In its second amended complaint, Team Systems alleges it is entitled to compensation for obtaining "financing" by virtue of arranging for the payment and

2

performance bonds. In addition, it asserts that Phillips & Jordan was FSAI's "strategic partner," thus entitling Team Systems to additional compensation. Defendants moved to dismiss the second amended complaint under Rule 12(b)(6) on various grounds.

The district court dismissed the claims against FSAI's Board of Directors, concluding it was not subject to suit, and against Jeff Haozous, the President and Chief Executive Officer of FSAI, in his official capacity because those claims duplicated claims against FSAI. Team Systems does not challenge this holding. The court then examined the claims against FSAI and Chairman Haozous in his individual capacity. The district court held that Team Systems' allegations regarding its acquisition of payment and performance bonds for the project did not state a claim for breach of contract because the bonds did not constitute "financing." The district court also held that Team Systems had failed to state a claim for contingent compensation based on its introduction of Phillips & Jordan to FSAI because Phillips & Jordan was not FSAI's "strategic partner."

Team Systems filed a notice of appeal challenging the district's court's order dismissing the second amended complaint. While that appeal was pending, Team Systems filed a Motion for Post-Trial Relief under Federal Rule of Civil Procedure 59(e). The district court denied Team Systems' Rule 59(e) motion, and Team Systems filed an amended notice of appeal.

3

## II.    DISCUSSION

### A. Applicable Law

We review de novo the district court's dismissal under Rule 12(b)(6) for failure to state a claim. *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016). We will affirm the dismissal if the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Although the sufficiency of a complaint must rest on its contents alone, there are [limited] exceptions to this restriction on what the court can consider, [including] documents that the complaint incorporates by reference. . . ." *Wasatch Equal.*, 820 F.3d at 386 (brackets and internal quotation marks omitted). Here, the Engagement Agreement was incorporated in, and included as an exhibit to, the second amended complaint, so we may consider it.

This case is based on diversity jurisdiction and the parties have stated in their contract for Oklahoma law to govern, so "we analyze the substantive legal questions associated with their dispute under, and in light of, that state's law." *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010). Under Oklahoma law, "[t]he courts will read the provisions of a contract in their entirety to give effect to the intention of the parties as ascertained from the four corners of the contract . . . ." *Okla. Oncology & Hematology P.C. v. US Oncology, Inc.*, 160 P.3d 936, 946 (Okla. 2007) (citation omitted). In addition, "[t]he courts will read the contract language in its plain and ordinary meaning unless a technical meaning is

4

conveyed." *Id.* The terms "financing" and "strategic partner" are not defined in the Engagement Agreement. Therefore, their meaning is to be determined from the entire contract. *See* Okla. Stat. tit. 15, § 157 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."). Moreover, "[t]he words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." *Id.* § 160. Neither party asserts that the terms at issue here are used in a technical or special way.

### B. Meaning of "Financing"

The district court held that Team Systems' allegations failed to state a claim for breach of contract based on the procurement of financing. In reaching that conclusion, the district court applied the following definition of "financing": "'the act or process or an instance of raising or providing funds; *also*: the funds thus raised or provided.'" Aplt. App. at 164 (quoting Webster's New Collegiate Dictionary (available at http://www.merriam-webster/dictionary/financing)); *see also Financing*, Black's Law Dictionary (10th ed. 2014) (same). It further determined that performance and payment bonds "do not raise capital or provide funding for a business project; they merely guarantee that payment or performance will be made during the project." Aplt. App. at 165. Thus, the district court concluded that accepting allegations of the second amended complaint as true, Team Systems had

5

failed to state a plausible claim for contingent compensation based on obtaining "financing."

Team Systems challenges this conclusion, arguing that *Black's Law Dictionary* defines "finance" as "to supply with funds," including through the issuance of bonds. Aplt. Opening Br. at 14 (quoting *Finance*, Black's Law Dictionary 630 (6th ed. 1991)). Moreover, Team Systems argues that *Black's Law Dictionary* defines "funds" as "[m]oney or other assets, such as stocks, **bonds**, or working capital, available to pay debts, expenses, and the like." Aplt. Reply Br. at 6 (quoting *Fund*, Black's Law Dictionary (10th ed. 2014) (def. 2, "usu. pl.") (emphasis in Reply Br.)).

But as the district court held, the common definitions of "payment bond" and "performance bond" indicate these instruments do not constitute "financing" under these circumstances. Aplt. App. at 164–65 (quoting www.sba.gov/content/surety-bonds-basics (last accessed April 28, 2015)). Indeed, *Black's Law Dictionary* defines "payment bond" as "[a] bond given by a surety to cover any amounts that, because of the general contractor's default, are not paid to a subcontractor or materials supplier" and "performance bond" as "[a] bond given by a surety to ensure the timely performance of a contract" or "[a] third party's agreement to guarantee the completion of a construction contract upon the default of the general contractor." *Bonds*, Black's Law Dictionary 630 (10th ed. 2014); *Performance Bond*, *id.*; *see also United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 959 (10th Cir. 2011) ("A performance bond . . . guarantees the contractor will satisfactorily perform the contract."); *Travelers Cas. & Sur. Co. v. Dormitory*

6

*Auth.-State of N.Y.*, 734 F. Supp. 2d 368, 373 n.7 (S.D.N.Y. 2010) (defining "payment bond" as "an undertaking by which a surety agrees to compensate subcontractors and suppliers who have furnished labor or supplies to the surety's 'principal' (often a general contractor), but who have not been paid by that principal," and "performance bond" as "an undertaking by which a surety agrees to be financially responsible to the owner of a construction project if that surety's principal fails to fulfill its contractual obligations to the owner").

The Federal Circuit recognized this distinction, stating "[a] 'financing institution' supplies financing.  That is its business.  It lends money or provides capital."  *Fireman's Fund. Ins. Co. v. England*, 313 F.3d 1344, 1350 (Fed. Cir. 2002) (applying federal Anti-Assignment Act).  There, the court rejected an insurance company's claim that it qualified as a "financing institution," holding instead that it was "an insurance company writing insurance policies that protect[ed] against risks, including the furnishing to the United States government of [necessary] performance and payment bonds."  *Id.*  We agree that the plain and ordinary definition of "financing" does not include arranging for payment and performance bonds.

Team Systems contends, however, that unless the payment and performance bonds are construed as "financing," a clause in the Engagement Agreement would be rendered meaningless.  *See* Okla. Stat. tit. 15, § 157 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others.").  The clause in question states that Team Systems would "not be responsible for any fees, expenses or commissions payable to

7

any other advisors, underwriters or agents (if any) utilized or retained by [FSAI] in connection with the . . . Financing." Aplt. App. at 37. But Team Systems does not claim that this clause is limited to (or even refers to) the acquisition of payment or performance bonds, nor does it explain why the clause could not apply to fees, expenses, and commissions charged in a commercial lending transaction.

Team Systems failed to state a claim for relief because the allegations that it obtained payment and performance bonds do not plausibly support a finding that it arranged "financing" as contemplated by the plain language of the agreement, considering the whole contract, taken together, as required by Oklahoma statute.

### C. Meaning of "Strategic Partner"

Team Systems next argues it is entitled to compensation for introducing FSAI to Phillips & Jordan because Phillips & Jordan became a "strategic partner" of FSAI. The district court stated that "strategic partner" is a "business term meaning a party 'with which a long-term agreement is reached for sharing of physical and/or intellectual resources in achievement of a common objective.'" Aplt. App. at 165 (quoting http://www.businessdictionary.com/definition/strategic-partner.html (last accessed April 28, 2015)). The court further stated that "[a] strategic partnership is 'a type of contractual alliance between two commercial enterprises that is not a formal legal partnership.'" *Id.* (quoting http://dictionary.reference.com/browse/strategic+partnership (last accessed April 28, 2015)).

8

Team Systems' second amended complaint alleged only that Phillips & Jordan "entered into a lump sum contract" with FSAI for two phases of the project, which "was essential to the success" of the project. Aplt. App. at 16. As the district court held, this allegation "provides no factual basis from which to conclude that the two entities formed a long-term agreement for sharing of resources or entered into any contractual alliance between enterprises." *Id.* at 166. Team Systems disputes this conclusion, arguing for a definition of "strategic partner" that would include any entity FSAI hired in connection with the project. But that would expand the scope of "strategic partner" beyond its common and ordinary meaning and, as FSAI notes, include even a private delivery service.

Team Systems failed to state a claim for relief based on the "strategic partner" clause because the allegations in the second amended complaint do not plausibly support a claim that Phillips & Jordan was FSAI's strategic partner.

**D. Whether the Engagement Agreement was Ambiguous**

Finally, Team Systems asserts that the operative terms in the Engagement Agreement are reasonably susceptible of differing meanings, thus rendering the Agreement ambiguous such that a remand is necessary to receive extrinsic evidence. In its post-judgment Rule 59(e) motion, Team Systems tried to offer additional evidence concerning the meaning of the terms "financing" and "strategic partnership." But the district court rejected that attempt, noting Team Systems had not filed a timely motion "to add factual allegations regarding ambiguity." *Id.* at 273.

9

Consequently, the court denied the ambiguity arguments raised for the first time in the Rule 59(e) motion.

"We review a denial of a Rule 59(e) motion for abuse of discretion." *Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1309 (10th Cir. 2014). A Rule 59(e) motion "is not appropriate to advance arguments that could have been raised in prior briefing." *Id.* (ellipsis and internal quotation marks omitted). Team Systems has proffered no reason for not raising these arguments earlier. In fact, in opposing dismissal Team Systems asserted that the Engagement Agreement was "clearly worded." Aplt. App. at 100. And it failed to assert the term had a technical meaning different than its common and ordinary meaning or to advance a definition of "strategic partnership" that could plausibly be met by participation in a lump sum contract alone. Under these circumstances, we find no abuse of discretion in the district court's ruling.

## III.    CONCLUSION

The district court's judgment of dismissal is affirmed.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

10